1  ALBERT M. COHEN (SBN 141525)
   LOEB & LOEB LLP
2  10100 Santa Monica Blvd., Suite 2200
   Los Angeles, CA  90067
3  Telephone:  310.282.2000
   Facsimile:   310.282.2200
4  acohen@loeb.com

5

6  Attorneys for Defendant
   CARERNCAR, LLC

7

8              UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  COOPER DRUM COOPERATING<br>PARTIES GROUP,<br><br>12<br><br>13              Plaintiff,<br><br>14              v.<br><br>15  (AKA "ANGELUS CHEMICAL"<br>AND/OR "ANGELES CHEMICAL<br>16  COMPANY, INCORPORATED"); M.<br>O. DION & SONS, INC.; PEMACO,<br>17  INC.; SASOL CHEMICALS (USA)<br>LLC; 5211 SOUTHERN AVENUE,<br>18  LLC, et al.,<br><br>19              Defendants.<br>20  _____<br>21  and Related Counterclaims, Cross-<br>Claims and Third-Party Complaints<br>22<br>          Counter-Defendants.<br>23 | Case No.:  2:19-cv-03007-AB-JPR<br><br>Assigned to Hon. Andre Birotte, Jr.<br><br>**SELECTED EXCERPTS FROM<br>DOCUMENTS IN REQUEST FOR<br>JUDICIAL NOTICE**<br><br>[Filed concurrently with Motion to<br>Dismiss Plaintiffs' Complaint;<br>Declaration of Albert Cohen; and<br>Request for Judicial Notice]<br><br><br>Date:    February 12, 2021<br>Time:    10:00 a.m.<br>CtRm:   7B |

24

25

26

27

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

20197966.1
236258-10001

1   The documents in the Request for Judicial Notice are voluminous. In order to
2   assist the Court in locating referenced pages we are submitting this Selected
3   Excerpts From Documents in the Request for Judicial Notice jointly filed by
4   Carerncar LLC and Armstrong Flooring, Inc.

5
6
7   Dated:  January 15, 2021                LOEB & LOEB LLP
                                            ALBERT M. COHEN
8
9                                           By: /s/ Albert M. Cohen
10                                              Albert M. Cohen
                                               Attorneys for CARERNCAR, LLC
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

20197966.1
236258-10001

2

SELECTED EXCERPTS FROM DOCUMENTS
CASE NO.  2:19-cv-03007-AB-JPR

## INDEX OF EXHIBITS

| | Description of Exhibit |
|---|---|
| **Exhibit A** | U.S. Environmental Protection Agency Unilateral Administrative Order No. 2009-07 dated February 17, 2009. |
| **Exhibit B** | Consent Decree between Plaintiff and the United States of America and the California Department of Toxic Substances Control filed April 20, 2016 in *United States of America, et al. v. AC Products, Inc., et al.*, Case No. 2:15-cv-09931-AB-FFM, Dkt. No. 15 (C.D. Cal.). |
| **Exhibit C** | September 27, 2002 U.S. Environmental Protection Agency Cooper Drum Company Superfund Site, Record of Decision, attached to the Consent Decree filed in *United States of America, et al. v. AC Products, Inc., et al.*, Case No. 2:15-cv-09931-AB-FFM, Dkt. No. 15 (C.D. Cal.). |
| **Exhibit D** | Statement of Work, attached to the Consent Decree entered in *United States of America, et al. v. AC Products, Inc., et al.*, Case No. 2:15-cv-09931-AB-FFM, Dkt. No. 15 (C.D. Cal.). |
| **Exhibit E** | Complaint filed by the United States of America and the California Department of Toxic Substances Control against Plaintiff on December 29, 2015 in *United States of America, et al. v. AC Products, Inc., et al.*, Case No. 2:15-cv-09931-AB-FFM, Dkt. No. 1 (C.D. Cal.) |
| **Exhibit F** | Docket Sheet in *United States of America, et al. v. AC Products, Inc., et al.*, Case No. 2:15-cv-09931-AB-FFM, Dkt. No. 1 (C.D. Cal.) |
| **Exhibit G** | Consent Decree filed in *United States of America v. Cooper Living Trust, Cooper Properties, LP*, Case 2:17-cv-07836 (C.D. Cal.) |

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW

3

# EXHIBIT A

SFUND RECORDS CTR
2199990



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**REGION IX**
**75 Hawthorne Street**
**San Francisco, CA  94105**

February 17, 2009                                       VIA FEDERAL EXPRESS

Thomas C. Readal, President
Penreco, Inc.
8701 New Trails Drive, #175
The Woodlands, TX 77381

   RE: Unilateral Administrative Order No. 2009-07: Cooper Drum Company
      Superfund Site

Dear Recipient of Unilateral Administrative Order No. 2009-07:

  Enclosed please find the referenced Unilateral Administrative Order ("Order").  The Order requires the recipients ("Respondents") to conduct the cleanup of the Cooper Drum Company Superfund Site (the "Site") as set out in the attached Record of Decision and Statement of Work and to comply with all other provisions of the Order and the documents attached to and incorporated in the Order.

  All Respondents were notified of their potential liability for cleanup of the Site by the Special Notice Letter dated May 23, 2008.  The Special Notice Letter also required all Respondents to make a good-faith offer to perform the cleanup.  EPA received offers on behalf of a number of Respondents, and conducted meetings to discuss those offers in August and September of 2008. Since the offers received by EPA, and discussed with Respondents, were partial offers, and were inadequate to conduct the entire cleanup of the Site, all offers were rejected as inadequate and the enclosed Order was prepared.

  Please note that, as set out in paragraphs 94 and 95 of the Order, EPA will hold a conference on March 5, 2009, at 1:00 pm at the Embassy Suites Hotel, Presidential/Executive Meeting Room, 8425 Firestone Blvd., Downey, CA 90241.  The purpose of the conference will be to discuss the Order and its implementation by the Respondents.

  Please also note that, as set out in paragraph 96 of the Order, the effective date of the Order is March 19, 2009.  Each Respondent is required, as set out in paragraph 26 of the Order, to submit the Notice of Intent to Comply with the Order by April 2, 2009, fourteen (14) days after the effective date.

If you have technical questions about the enclosed Order, please contact Eric Yunker of EPA's Superfund program at 415-972-3159.  If you have legal questions about the Order, please contact Jim Collins of EPA's Office of Regional Counsel at 415-972-3894.

Sincerely,

*Kathleen Salyer*

Kathleen Salyer
Assistant Director, Superfund Division
California Site Cleanup Branch

Enclosures:
1. Unilateral Administrative Order 2009-07
2. Attachment 1 – Site Map
3. Attachment 2 – List of Respondents
4. Attachment 3 – Record of Decision
5. Attachment 4 – Remedial Design Reports, OU1 Groundwater and OU2 Soil
6. Attachment 5 – Statement of Work

6

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
Region 9

In The Matter Of:                                                    )
                                                                     )
COOPER DRUM COMPANY SUPERFUND SITE                                   )
                                                                     )
A. G. Layne, Inc.                                                    )
Ashland, Inc.                                                        )
Atlantic Richfield Company                                           )
Baker Petrolite Corporation                                          )
Cargill, Inc.                                                        )
Castrol Industrial North America, Inc.                               )
Chemcentral Corporation                                              )
Chemtura Corporation                                                 )
Chevron Corporation                                                  )
Cooper Living Trust                                                  )
Cooper Properties, LP                                                )
Coral Chemical Company                                               )
CRC Industries, Inc.                                                 )
D.A. Stuart Company                                                  )
Dunn Edwards Corporation                                             )
Engineered Polymer Solutions, Inc.                                   )
Exxon Mobil Oil Corporation                                          )
Gallade Chemical, Inc.                                               )
G.E. Betz, Inc.                                                      )
Hasco Oil Company                                                    )
Houghton International, Inc.                                          )
J.H. Mitchell & Sons, Distributors, Inc.                             )
Lockheed-Martin Corporation                                          )
Lonza, Inc.                                                          )
Lubricating Specialties Company                                      )
Mathisen Oil Company, Inc.                                           )
Pennzoil-Quaker State Company                                        )
Penreco, Inc.                                                        )
Petrolock, Inc.                                                      )
Powerine Oil Company                                                 )
Quaker Chemical Corporation                                          )

7

Rathon Corporation                                          )
Shell Chemical Company                                      )
Shell Oil Company                                           )
SOCO West, Inc.                                             )
Southern California Edison                                  )
Southern Counties Oil Company, LLP                          )
Stuart's Petroleum Corporation                              )
Texaco Refining & Marketing, Inc.                           )
Union Oil Company of California                             )
Univar USA, Inc.                                            )
Viacom, Inc.                                                )
Waste Management, Inc.                                      )
                                                            )
        Respondents.                                )
                                                            )          U.S. EPA
                                                            )          Docket No. 2009-07
                                                            )
                                                            )
Proceeding Under Section 106(a) of the                      )
Comprehensive Environmental Response,                       )
Compensation, and Liability Act of 1980,                    )
as amended, 42 U.S.C. § 9606(a), and                        )
under Section 7003 of the Solid Waste                       )
Disposal Act, as amended, 42 U.S.C. § 6973                  )


### ADMINISTRATIVE ORDER
### FOR  REMEDIAL ACTION

ii

8

1

2 ## I. INTRODUCTION AND JURISDICTION

3    1. This Order directs Respondents to implement the remedial design for the remedy described in
4 the Record of Decision for the Cooper Drum Company Superfund Site (the "Site") dated
5 September 27 , 2002, by performing the remedial action. The remedial design for the remedy at
6 the Site was certified as completed on September 21, 2007.  This Order is issued to Respondents
7 by the United States Environmental Protection Agency ("EPA") under the authority vested in the
8 President of the United States by Section 106(a) of the Comprehensive Environmental Response,
9 Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9606(a).  This
10 authority was delegated to the Administrator of EPA on January 23, 1987, by Executive Order
11 12580 (52 Fed. Reg. 2926, January 29, 1987), and was further delegated to EPA Regional
12 Administrators on May 11, 1994, by EPA Delegation No. 14-14-B.  This authority was further
13 delegated through the Director of the Superfund Division, EPA Region 9, to Region 9 Superfund
14 Branch Chiefs by an Order dated November 16, 2007.  This Order is also issued under the
15 authority vested in the Administrator of EPA by Section 7003 of the Solid Waste Disposal Act,
16 commonly referred to as the Resource Conservation and Recovery Act of 1976 ("RCRA"), as
17 amended, 42 U.S.C. § 6901 et seq., which authority has been duly delegated to the Regional
18 Administrator of EPA, Region IX, and further delegated to the Director of the Superfund
19 Division and Superfund Branch Chiefs.

20 ## II. FINDINGS OF FACT

21    2. The Site is an approximately 3.8 acre parcel of land located in a mixed commercial, industrial
22 and residential area. A map showing the location of the Site is attached as Attachment 1. The Site
23 has been used to recondition steel drums that previously held a variety of industrial chemicals.
24 EPA completed its Remedial Investigation of the Site in May 2002. The investigation concluded
25 that substantial portions of the soil and groundwater beneath the Site have been contaminated by
26 volatile organic compounds ("VOCs"), mainly chlorinated solvents such as trichloroethene
27 ("TCE"), tetrachloroethene ("PCE"),  and isomers of dichloroethene ("DCE") and dichloroethane

<div align="center">1</div>

1    ("DCA"). Other contaminants of concern are 1,4 dioxane in groundwater and polyaromatic

2    hydrocarbons ("PAHs"), polychlorinated biphenyls ("PCBs") and lead in the soil.

3    3. The Respondents to this Order are identified in the caption of this Order and on Attachment 2

4    to this Order.

5

6    4. Respondents Cooper Living Trust and Cooper Properties, L.P. are the present owners of the

7    Site ("Owner Respondents").

8    5. All other Respondents ("Generator Respondents") had ongoing business relationships with the

9    Cooper Drum Company, which owned and operated the Site from 1972 through May of 1992.

10    The business of each Generator Respondent involved the use, storage, and/or processing of

11    hazardous substances and/or solid wastes. Cooper Drum Company, as a drum reconditioning

12    operation, picked up or accepted for processing used 55 gallon drums from each of the Generator

13    Respondents. Drums received at the Site from each Generator Respondent contained residues of

14    hazardous substances and/or solid wastes. During drum reconditioning, residues contained in the

15    drums were routinely released into the environment. The Site is now contaminated with

16    hazardous substances and solid wastes of the same kind as used, stored and/or processed by the

17    Generator Respondents at their own facilities during the course of their business relationships

18    with Cooper Drum Company.

19    6. The Respondents referred to in paragraphs 4 and 5 are referred to collectively throughout this

20    Order as "Respondents."

21    7. From 1996 to 2001, EPA undertook a Remedial Investigation and Feasibility Study ("RI/FS")

22    for the Site, pursuant to CERCLA and the National Contingency Plan, 40 C.F.R. Part 300. In a

23    report dated May, 15, 2002, EPA presented the results of the Cooper Drum Company RI and FS.

24    8. In June 2001,  pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Cooper

25    Drum  Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B (49 Fed.

26    Reg. 40320).

2

1    9. Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the

2    completion of the RI/FS and the proposed plan for remedial action in June, 2002, and provided

3    opportunity for public comment on the proposed remedial action.

4    10. The decision by EPA on the remedial action to be implemented at the Cooper Drum Site is

5    embodied in a Record of Decision ("ROD"), executed  September 27, 2002, on which the State

6    has given its concurrence.  The ROD is attached to this Order as Attachment 3 and is

7    incorporated by reference.  The ROD is supported by an administrative record that contains the

8    documents and information upon which EPA based the selection of the response action.

9    11. The highest concentrations of contaminants of concern found in environmental Site media

10   (soil vapor, soil, and groundwater) include: 1) Soil Vapor, with total VOC soil vapor

11   concentrations up to 1,400,000 parts per billion by volume (ppbv) including cis-1,2-DCE up to

12   430,000 ppbv; 2) Soil, with PCB concentrations up to 5,500 parts per billion (ppb), PAHs,

13   including benzo(a)pyrene up to 4,300 ppb, and lead up to 3,240 parts per million (ppm); and 3)

14   Groundwater, with concentrations up to 490 ppb of TCE, 460 ppb of DCE, and 450 ppb of 1,4

15   dioxane.

16          Hazardous substances and solid wastes released at and from the Site have moved

17   downward from the ground surface through the soil column and into underlying groundwater,

18   resulting in both soil and groundwater contamination. Evidence of downward, chemical

19   migration through the soil column and into the groundwater includes the relative distribution and

20   concentrations of the soil vapor, soil, and groundwater samples collected from beneath and

21   hydraulically downgradient from the Site, demonstrating the presence of PCE, TCE, and other

22   Site-related chemicals used at the Generator Respondents' facilities and transported to the Site in

23   the course of the Generator Respondents' business dealings with the Cooper Drum Company.

24          The resulting groundwater contamination has generally migrated from the Site in a

25   southerly direction through the upper aquifer The groundwater in this upper aquifer is designated

26   as a potential drinking water source in the Los Angeles Regional Water Quality Control Board's

27   Water Quality Control Plan (Basin Plan). Several deeper groundwater aquifers contiguous to and

28   beneath the Site are currently used for domestic purposes, including drinking water, and are

3

11

1   presently endangered by Site contaminants migrating laterally and vertically from the shallow
2   aquifer towards and into the deeper aquifers.
3       The Human Health Risk Assessment completed by EPA in 2002, described in detail in the
4   ROD, evaluated potential exposure pathways and concluded that, without Site remediation, there
5   would be an increased health risk to: on-site outdoor workers exposed to soil contaminants if
6   surface soils are disturbed; on-site indoor workers exposed to vapor intrusion from contaminated
7   Site soils; and on-site and off-site users of area groundwater for domestic purposes (e.g. washing,
8   bathing, laundry, and drinking water) as a result of ingestion, dermal contact and inhalation of
9   contaminated groundwater.

10  12. Response actions at the Site have included EPA's RI/FS activities (approximately 1996
11  through 2001); soil, soil gas, and groundwater investigations; and development of the Remedial
12  Design ("RD")( 2007).

13  13. The selected remedy for soils and groundwater, as embodied in the ROD, provides for
14  addressing the contamination at the Site and removing the risks to human health and the
15  environment as follows:
16      a) Extraction and treatment of VOC-contaminated soil vapor in the vadose zone by Dual
17  Phase Extraction technology, to address the threat of exposure to on-site workers from these
18  contaminants and to prevent contaminants from migrating into groundwater;
19      b) Installation and operation of an on-site source area groundwater treatment system to
20  address contamination in the upper aquifer underlying the Site;
21      c) Installation and operation of a Downgradient Containment and Treatment System to
22  address groundwater contamination which has migrated into portions of the upper aquifer
23  contiguous to and downgradient from the Site, to alleviate the threat that contamination will
24  migrate further laterally and vertically to the deep aquifer; and
25      d) Excavation and off-site disposal of soils contaminated with non-VOCs, to address the
26  threat of exposure to on-site workers from these contaminants during soil disturbing activities.
27  Institutional controls will be enacted should any of this waste be left in place.
28

4

12

# EXHIBIT B



1  JOHN C. CRUDEN                                    JS-6
2  Assistant Attorney General
   Environment and Natural Resources Division
3
4  CHERYL ANN LUKE, Va. Bar Number: 26331
   Environmental Enforcement Section
5  Environment and Natural Resources Division
6  United States Department of Justice
   P.O. Box 7611
7  Washington, D.C. 20044-7611
8  Telephone:  (202) 514-5466
9  Fax: (202) 616-2427
   Email:  cheryl.luke@usdoj.gov
10
11 Attorneys for Plaintiff United States of America
12 (See additional parties on next page)
13
14
15              UNITED STATES DISTRICT COURT
16             CENTRAL DISTRICT OF CALIFORNIA
                      WESTERN DIVISION
17
18 UNITED STATES OF AMERICA,     )
19 and STATE OF CALIFORNIA       )
   DEPARTMENT OF TOXIC           )
20 SUBSTANCES CONTROL,           )    CIV. NO.: 2:15-cv-09931 AB(FFMx)
21                               )
        Plaintiffs,              )
22                               )
23 v.                            )    CONSENT DECREE
                                 )
24 AC PRODUCTS, INC., et al.     )
25                               )
        Defendants.              )
26 _____)
27
28

                                  1

1   KAMALA D. HARRIS
2   Attorney General of California

3   SARAH E. MORRISON, State Bar No. 143459
4   Supervising Deputy Attorney General

5   OLIVIA W. KARLIN, State Bar No. 150432
6   Deputy Attorney General
7   300 South Spring Street, Suite 1702
    Los Angeles, CA  90013
8   Telephone: (213) 897-0473
9   Fax: (213) 897-2802
    E-Mail: olivia.karlin@doj.ca.gov
10

11  Attorneys for Plaintiff State of California Department of Toxic Substances Control

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

15

## I.   BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of California Department of Toxic Substances Control ("DTSC") (collectively "Plaintiffs") filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607 ("Complaint").

B.      The Plaintiffs' Complaint seeks, inter alia: (1) reimbursement of costs incurred by EPA and the Department of Justice ("DOJ") and by DTSC for response actions at the Cooper Drum Company Superfund Site ("Site") in South Gate, Los Angeles County, California, together with accrued interest; and (2) performance of response actions by defendants at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 ("NCP").

C.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the DTSC in July 2010 of negotiations with potentially responsible parties regarding the implementation of the remedial design and remedial action for the Site, and EPA has provided DTSC with an opportunity to participate in such negotiations and to be a party to the Complaint and to this Consent Decree.

D.      DTSC thereafter joined the United States' Complaint alleging that the defendants are liable to the State of California Department of Toxic Substances Control under Section 107 of CERCLA, 42 U.S.C. §9607, and Health and Safety Code Sections 25358.3 and 25360.

E.      The defendants who have entered into this Consent Decree ("Settling Defendants") do not admit any liability to Plaintiffs arising out of the transactions or occurrences alleged in the Complaint, nor do they acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an

5

1   imminent and substantial endangerment to public health or welfare or the

2   environment.

3   F.      Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site

4   on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by

5   publication in the Federal Register in June 2001, 49 Fed. Reg. 40,320.

6   G.      In response to a release or substantial threat of a release of hazardous

7   substances at or from the Site, EPA undertook a Remedial Investigation and

8   Feasibility Study ("RI/FS") for the Site from 1996 to 2001 pursuant to 40 C.F.R. §

9   300.430.

10  H.      EPA completed a Remedial Investigation and Feasibility Study Report on

11  May 15, 2002.

12  I.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published

13  notice of the completion of the RI/FS and of the proposed plan for remedial action

14  in June 2002, in a major local newspaper of general circulation.  EPA provided an

15  opportunity for written and oral comments from the public on the proposed plan

16  for remedial action.  A copy of the transcript of the public meeting is available to

17  the public as part of the administrative record upon which the Regional

18  Administrator, EPA Region IX, based the selection of the response action.

19  J.      The decision by EPA on the remedial action to be implemented at the Site is

20  embodied in a final Record of Decision ("ROD"), executed on September 27,

21  2002, on which DTSC had a reasonable opportunity to review and comment.  Both

22  the Remedial Investigation Feasibility Study (URS, May 2002) and the ROD

23  acknowledge that groundwater at the Site has been impacted by upgradient off-site

24  releases of chemicals of concern ("COCs") that are unrelated to the Site or

25  historical Site activities. Additionally, EPA added two adjacent sites to the

26  National Priorities List.  The ROD includes a responsiveness summary to the

27  public comments.  Notice of the final plan was published in accordance with

28

1  Section 117(b) of CERCLA, 42 U.S.C. § 9617(b).  The ROD is attached as

2  Appendix A.

3  K.      On September 21, 2007, EPA completed two Remedial Design Reports

4  containing the Remedial Designs for the Remedial Action for soils and

5  groundwater at the Site.

6  L.      On February 11, 2009, EPA issued Unilateral Administrative Order 2009-07

7  (the "Order") to 43 recipients requiring the recipients to conduct the Remedial

8  Action at the Site pursuant to the ROD and the Remedial Designs.  In compliance

9  with the Order, certain of the recipients formed the Cooper Drum Cooperating

10  Parties Group (the "Group") and, since 2009, the Group has been performing work

11  pursuant to the Order.

12  M.      Based on the information presently available to EPA, EPA believes that the

13  Work will be properly and promptly conducted by Performing Settling Defendants

14  if conducted in accordance with the requirements of this Consent Decree and its

15  appendices.

16  N.      Solely for purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the

17  remedy set forth in the ROD and the Work to be performed by Performing Settling

18  Defendants shall constitute a response action taken or ordered by the President for

19  which judicial review shall be limited to the administrative record.

20  O.      The United States has reviewed the financial information submitted by the

21  Ability-to-Pay Settling Defendants to determine whether the Ability-to-Pay

22  Settling Defendants are financially able to pay response costs incurred and to be

23  incurred at the Site.  Based upon this financial information, the United States has

24  determined that the Ability-to-Pay Settling Defendants are able to pay the amounts

25  required under this Consent Decree.

26  P.      The United States has reviewed available evidence relating to the volumes

27  and toxicity of wastes at the Site attributable to the known potentially responsible

28

7

1  ROD or in a Consent Decree ROD Amendment in accordance with the SOW

2  or an amended SOW and for achievement of the Performance Standards and

3  other requirements set forth in the ROD, this Consent Decree, and the SOW

4  or an amended SOW.  Upon approval of the Remedial Action Work Plan(s)

5  by EPA, after reasonable opportunity for review and comment by DTSC, the

6  Supplemental Remedial Design(s) shall be incorporated into and enforceable

7  under this Consent Decree.

8      11.    Remedial Action.

9          a.    As set out in the SOW, the Group has performed work pursuant

10  to the Order since 2009 and in the course of its compliance with the Order

11  has completed and submitted deliverables approved by EPA in furtherance

12  of the Remedial Action.  Those previously submitted and approved

13  deliverables are listed and described in the SOW.

14          b.    The Remedial Action is being conducted in three phases.  EPA

15  has approved work plans submitted by the Performing Settling Defendants

16  for Phase 1 Soil and Phase 1 Groundwater and Addenda that described the

17  remedial work to be performed for the soil (Operable Unit 2, or "OU2") and

18  groundwater (Operable Unit 1 or "OU1").  Phases 2 and 3 will entail

19  preparation of a single work plan for each phase.  The Phase 2 Remedial

20  Action Work Plan shall include details for an OU1 downgradient

21  containment and treatment system or the alternative Remedial Action

22  selected by EPA in a Consent Decree ROD Amendment after evaluation of

23  monitored natural attenuation ("MNA") and, if appropriate, the Focused

24  Feasibility Study as set out in the SOW. The Phase 3 Remedial Action Work

25  Plan shall include details for OU2 soil excavation and disposal.  The

26  Remedial Action Work Plans for Phase 2 and Phase 3 must be reviewed and

27  approved by EPA, after reasonable opportunity for review and comment by

28  DTSC.

20

19

1  or the environment, Performing Settling Defendants shall, subject to Paragraph 52,

2  immediately take all appropriate action to prevent, abate, or minimize such release

3  or threat of release, and shall immediately notify the EPA's Project Coordinator,

4  or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator.

5  If neither of these persons is available, the Performing Settling Defendant shall

6  notify the EPA Emergency Response Unit, Region IX.  Performing Settling

7  Defendants shall take such actions in consultation with EPA's Project Coordinator

8  or other available authorized EPA officer and in accordance with all applicable

9  provisions of the Health and Safety Plans, the Contingency Plans, and any other

10  applicable plans or documents developed pursuant to the SOW.  In the event that

11  Performing Settling Defendants fail to take appropriate response actions as

12  required by this Section and EPA, or as appropriate, DTSC, takes such action

13  instead, Performing Settling Defendants shall reimburse EPA and DTSC for all

14  costs of the response action not inconsistent with the NCP under Section XVI

15  (Payments for Response Costs).

16          52.    Subject to Section XXI (Covenants by Plaintiffs), nothing in the

17  preceding Paragraph or in this Consent Decree shall be deemed to limit any

18  authority of the United States or DTSC (a) to take all appropriate action to protect

19  human health and the environment or to prevent, abate, respond to, or minimize an

20  actual or threatened release of Waste Material on, at, or from the Site, or (b) to

21  direct or order such action, or seek an order from the Court, to protect human

22  health and the environment or to prevent, abate, respond to, or minimize an actual

23  or threatened release of Waste Material on, at, or from the Site.

24  **XVI.        PAYMENTS FOR RESPONSE COSTS**

25          53.    Payment by Settling Defendants for Past Response Costs

26                 a.     Within 30 days after the Effective Date, Performing Settling

27  Defendants shall pay to EPA $2,617,266.14 (Two Million, Six Hundred and

28  Seventeen Thousand, Two Hundred Sixty-Six Dollars and Fourteen Cents)

1   in payment for Past Response Costs and to DTSC $53,599.49 (Fifty-Three

2   Thousand, Nine Hundred and Ninety-Nine Dollars and Forty-Nine Cents) in

3   payment for Past Response Costs.

4        b.      Ability-to-Pay Settling Defendants shall pay to EPA the

5   amounts set out in Appendix F at the times set out therein.

6        c.      Each De Minimis Settling Defendant shall pay to EPA the

7   amount set out for it in Appendix G at the time set out therein.

8        d.      The total amount to be paid by Settling Defendants to EPA

9   pursuant to Paragraph 53(a)-(c) shall be deposited by EPA in the Cooper

10  Drum Company Special Account to be retained and used to conduct or

11  finance response actions at or in connection with the Site or to be transferred

12  by EPA to the EPA Hazardous Substance Superfund.  Payments to DTSC

13  under this Section shall be deposited in the Toxic Substances Control

14  Account established pursuant to Health and Safety Code § 25173.6.

15       54.     Payments by Performing Settling Defendants for Interim Response

16  Costs and Future Response Costs.  Performing Settling Defendants shall pay to

17  EPA and DTSC all Interim Response Costs and all Future Response Costs not

18  inconsistent with the NCP incurred at the Site.

19       a.      Performing Settling Defendants shall pay to EPA and DTSC all

20  Interim Response Costs within 60 days after receipt of bills for Interim

21  Response Costs from EPA and DTSC respectively, in accordance with

22  Paragraph 55(a) (Instructions for Past Response Costs Payments and Interim

23  Response Costs Payments).  The bill from EPA for Interim Response Costs

24  will include a regionally-prepared cost summary that includes direct and

25  indirect costs incurred by EPA and its contractors along with backup

26  documentation for such costs and a DOJ cost summary along with back up

27  documentation for such costs.  The bill from DTSC for Interim Response

28  Costs will include a DTSC-prepared cost summary that includes direct and

55

1    Defendant may have against any person if such person asserts a claim or cause of

2    action relating to the Site against such Settling Defendant.

3    **XXIII.**       **EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION**

4        97.    Except as provided in Paragraph 96 (Claims against De Minimis

5    Parties, Ability to Pay Parties, and Persons That Received Special Notice), nothing

6    in this Consent Decree shall be construed to create any rights in, or grant any cause

7    of action to, any person not a Party to this Consent Decree.  Except as provided in

8    Paragraph 96 (Claims against De Minimis Parties, Ability to Pay Parties, and

9    Persons That Received Special Notice), each of the Parties expressly reserves any

10   and all rights (including, but not limited to, pursuant to Section 113(f)(2)-(3) of

11   CERCLA, 42 U.S.C. § 9613(f)(2)-(3), defenses, claims, demands, and causes of

12   action that each Party may have with respect to any matter, transaction, or

13   occurrence relating in any way to the Site against any person not a Party hereto.

14   Nothing in this Consent Decree diminishes the right of the United States, pursuant

15   to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any

16   such persons to obtain additional response costs or response action and to enter

17   into settlements that give rise to contribution protection pursuant to Section

18   113(f)(2).

19       98.    The Parties agree, and by entering this Consent Decree this Court

20   finds, that this Consent Decree constitutes a judicially approved settlement for

21   purposes of Section 113(f)(2) of CERCLA, 42 U.S.C § 9613(f)(2), and that each

22   Settling Defendant is entitled, as of the Effective Date, to protection from

23   contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as

24   may be otherwise provided by law, for "matters addressed" in this Consent Decree.

25   The "matters addressed" in this Consent Decree are all response actions taken or to

26   be taken and all response costs incurred or to be incurred, at or in connection with

27   the Site, not to include response actions to be taken and response costs to be

28   incurred in connection with the remediation of aquifers underlying the Gaspur

84

# EXHIBIT C



1
2
3   **UNITED STATES DISTRICT COURT**
    **CENTRAL DISTRICT OF CALIFORNIA**
4   **WESTERN DIVISION**
5
6
7   UNITED STATES OF AMERICA,    )
    & STATE OF CALIFORNIA,       )        CIV. NO.:
8                                )
9           Plaintiffs,          )
                                 )
10  v.                           )        CONSENT DECREE
11                               )
    AC PRODUCTS, INC., et al.    )
12                               )
13          Defendants.          )
                                 )
14  _____)
15
16
17
18                    **Appendix A**
19
20               **Record of Decision**
21
22
23
24
25
26
27
28

                                                    140

# RECORD OF DECISION

## COOPER DRUM COMPANY
## CITY OF SOUTH GATE, CALIFORNIA

U.S. Environmental Protection Agency
Region 9
San Francisco, California

September 27, 2002

141

Case 2:19-cv-03007-AB-PVC   Document 381-2   Filed 01/15/21   Page 26 of 61   Page ID
#:3235
Case 2:15-cv-09931-AB-FFM   Document 34-1   Filed 12/29/15   Page 8 of 96   Page ID #:169

## PART I      THE DECLARATION

### 1.1      Site Name and Location

Cooper Drum Company
9316 Atlantic Avenue
City of South Gate, Los Angeles County, California  90280
CERCLIS Identification Number CAD055753370.

### 1.2      Statement of Basis and Purpose

This decision document presents the selected remedy for the Cooper Drum Company Superfund Site (Cooper Drum), in South Gate, California, which was chosen in accordance with Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by Superfund Amendments and Reauthorization Act of 1986 (SARA) (collectively referred to herein as CERCLA) and to the extent practicable, the National Oil and Hazardous Substances Pollution Contingency Plan, (NCP).  This decision is based on the Administrative Record file for Cooper Drum.

The State of California, acting through the California Department of Toxic Substances Control (DTSC) and the Los Angeles Regional Water Quality Control Board (LARWQCB), concur with the selected remedy.

### 1.3      Assessment of Site

The response action selected in this Record of Decision (ROD) is necessary to protect the public health or welfare or the environment from actual or threatened releases of hazardous substances, pollutants or contaminants from the Cooper Drum site which may present an imminent and substantial endangerment to public health or welfare.

### 1.4      Description of Selected Remedy

The remedial action for Cooper Drum addresses contaminated soil and groundwater.  To remove the potential threat to human health, the selected remedy will use dual phase extraction (DPE) for treatment of volatile organic compounds (VOCs) in soil and perched groundwater.  Other non-VOC soil contaminants, including semi-volatile organic compounds (SVOCs), PCBs, and lead, will be excavated and disposed of off site.  Institutional controls will be implemented to prevent exposure to soil contaminants where excavation is not feasible.  The cleanup strategy for groundwater contaminated with VOCs will use a combination of methods to achieve remedial goals and to restore the potential beneficial use of the aquifer as a drinking water source.  An extraction/treatment system will be used for containment and remediation.  Chemical in situ treatment will also be used to enhance the treatment of VOCs in groundwater, minimize the need for extraction, and reduce the potential for other VOC plumes in the vicinity to impact Cooper Drum.

There is no source material or non-aqueous phase liquids (NAPLs) in the groundwater constituting a principal threat at Cooper Drum.  The VOCs in the soil are mobile but are low-level threats to

human health since they contain relatively low contaminant concentrations and can be contained. The non-VOCs in the shallow soil are not mobile and are localized in a confined area.

The major components of the selected remedy includes the following actions:

<u>Selected Remedy for Soil</u>

- In the former hard wash area (HWA), extract VOC-contaminated soil vapor and groundwater simultaneously using dual phase extraction (DPE) technology.  Treat the extracted soil vapor and groundwater using vapor and liquid phase carbon in vessels at an on-site treatment plant.

- After removal of VOCs, discharge the treated soil vapor into the air.  The treated water will be reinjected into the aquifer or discharged to the public sewer system operated by the Los Angeles County Sanitation District.

- Conduct additional soil gas sampling in the drum processing area (DPA) during the remedial design (RD) phase to further identify the extent of VOC contamination and the need for remediation using dual phase extraction in this area.

- In the HWA and DPA, excavate an estimated 2,700 tons of non-VOC contaminated shallow soil (estimated down to five feet in depth) for disposal at an approved off-site facility.  Use clean soil to backfill excavated areas.

- Conduct additional soil sampling in the DPA and HWA during the RD phase to further define the extent of non-VOC contamination and the need for remediation beyond the estimated 2,700 tons of soil.

- Implement institutional controls for soil contaminated with non-VOCs in areas where excavation is not feasible, such as under existing structures, by requiring the execution and recording of a restrictive covenant which will limit activities that might expose the subsurface and would prevent future use, including residential, hospital, day care center and school uses, as long as contaminated soil remains on site.

<u>Selected Remedy for Groundwater</u>

- Extract groundwater contaminated with VOCs and treat it using liquid-phase activated carbon in vessels at an on-site treatment system.  Containment will be provided at the downgradient extent of contamination.

- The treated water will be reinjected into the contaminated groundwater aquifer or discharged to the public sewer system operated by the Los Angeles County Sanitation District. Reinjection will reduce the intrusion of and the potential for mixing with other off-site VOC plumes.

Cooper Drum ROD                              2 of 89

148

- Use in situ chemical treatment, either reductive dechlorination or chemical oxidation, to enhance remediation of VOC-contaminated groundwater.  During the remedial design (RD) phase, conduct treatability studies to evaluate both methods and determine which works best under site conditions.  Data obtained from pilot studies will also be used to determine the specific number and placement of in situ injection points.

- Conduct additional groundwater sampling during the RD phase to further define the downgradient extent of the VOC contamination.

- Conduct groundwater monitoring to evaluate the effectiveness of the remedy, the location of the plume,  and that remediation goals have been met.

## 1.5   Statutory Determination

The selected remedy is protective of human health and the environment, complies with federal and state requirements that are applicable or relevant and appropriate to the remedial action, is cost-effective, and utilizes permanent solutions and alternative treatment technologies to the maximum extent practicable.

This remedy also satisfies the statutory preference for treatment as a principal element of the remedy (i.e., reduces the toxicity, mobility, or volume of hazardous substances, pollutants, or contaminants as a principal element through treatment).

Because this remedy may result in hazardous substances, pollutants, or contaminants in soil remaining on site above levels that allow for unlimited use and unrestricted exposure, and will take longer than five years to attain RAOs and cleanup levels, a review will be conducted within five years after initiation of the remedial action for Cooper Drum to ensure that the remedy is, or will be, protective of human health and the environment.

## 1.6   ROD Data Certification Checklist

The following information is included in the Decision Summary section of this Record of Decision. Additional information can be found in the Administrative Record file for Cooper Drum.

- Chemicals of concern and their respective concentrations - Page 15;

- Baseline risk represented by the chemicals of concern - Page 21;

- Cleanup levels established for chemicals of concern and the basis for these levels - Page 74;

- Conclusion that there are no source materials constituting principal threats at the site - Page 63;

- Current and reasonably anticipated future land use assumptions and current and potential future beneficial uses of groundwater used in the baseline risk assessment and ROD - Page 19;

Case 2:19-cv-03007-AB-PVC   Document 381-2   Filed 01/15/21   Page 29 of 61   Page ID
#:8238
Case 2:15-cv-09931-AB-FFM   Document 32-1   Filed 12/29/15   Page 11 of 96   Page ID #:172

•       Potential land and groundwater use that will be available at the site as a result of the selected
        remedy - Page 73;

•       Estimated capital, annual operation and maintenance (O&M), and total present worth costs,
        discount rate, and the number of years over which the remedy cost estimates are projected -
        Page 69; and

•       Key factor(s) that led to selecting the remedy - Page 64.

## 1.7   Authorizing Signature

John Kemmerer, Chief                                                     9/27/02
Superfund Site Cleanup Branch
U.S. Environmental Protection Agency, Region 9                              Date

Cooper Drum ROD                          4 of 89

                                                                           150

# EXHIBIT D

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

UNITED STATES OF AMERICA,  )
& STATE OF CALIFORNIA,  )    CIV. NO.:
    )
    Plaintiffs,  )
    )
v.  )    CONSENT DECREE
    )
AC PRODUCTS, INC., et al.  )
    )
    Defendants.  )
    )

**Appendix C**

**Statement of Work**

238

31

**CONSENT DECREE STATEMENT OF WORK**
**FOR**

**REMEDIAL ACTION**

**AT THE**

**COOPER DRUM COMPANY SUPERFUND SITE**
**SOUTH GATE, LOS ANGELES COUNTY, CALIFORNIA**

**June 2015**

239

Case 2:19-cv-03007-AB-PVC   Document 381-2   Filed 01/15/21   Page 33 of 61   Page ID
#:3242
Case 2:15-cv-09931-AB-FFM   Document 35-2   Filed 12/29/15   Page 5 of 47   Page ID #:264

## I.   PURPOSE/INTRODUCTION

This Statement of Work (SOW) defines the response activities and deliverables the Performing Settling Defendants (PSDs) are obligated to perform in order to implement the Work under the Consent Decree for the Cooper Drum Company Superfund Site (Site).  "Site" shall mean the Cooper Drum Company Superfund Site, Los Angeles County, California, as defined in the Consent Decree to which this SOW is attached and made a part.  Further, for the purpose of this document, "the Property" is defined to mean the area within the property boundary which consists of 2.4 acres that includes the former facility and is, as of the date of the entry of the Consent Decree, owned by the Cooper Living Trust (Figure 1).  The Work consists of the remedial actions (RAs) selected by the United States Environmental Protection Agency (EPA) in the 2002 Record of Decision (ROD), or in any Consent Decree ROD amendment, and as specified in the following documents:

- The Remedial Design (RD) Reports for the Groundwater Operable Unit (OU) OU1 and Soil OU2 issued by EPA in September 2007;
- Phase 1 OU1 Groundwater and OU2 Soil RA Work Plans (RAWP) (and associated RAWP Addenda and supporting documents) approved by EPA under the Unilateral Administrative Order (UAO) for Remedial Action effective on March 19, 2009.

EPA is the lead agency for this Site.  The State of California Department of Toxic Substances Control (DTSC) will be copied on all project deliverables and may participate in project meetings and Site visits during implementation of the Consent Decree and the SOW.

The PSDs must implement the Work in compliance with the ROD, the RD Reports, the approved RAWP, this SOW and any applicable EPA guidance.  Differences exist among these documents because of adjustments made to account for new Site information collected since the ROD was finalized in 2002.  Where differences exist among these documents, the latest approved document shall govern the RA.  The RA shall also be consistent with the RD/RA Handbook (EPA Office of Solid Waste and Emergency Response [OSWER] 9355.0-04B, EPA 540/R-95/059, June 1995).  Technical and decision documents for the Site are found at the EPA website.  Instructions for accessing the website and documents are included in Section VII (References) of this SOW.

As shown in Table A-1, the chemicals of concern (COCs) have been subdivided into three classes of chemicals according to their chemical properties and affected media as follows:

(1) Volatile organic compounds (VOCs), which have been found in soil, soil gas and groundwater at the Site;

(2) 1,4-Dioxane, which has been found in groundwater at the Site; and

1

1   for Major Deliverables in this SOW for the due date for implementing this task.

<div style="border:1px solid">

2         1.    <u>Phase 1 OU2 RA (VOCs).  Installation and Operation of DPE</u>
3               <u>System for Soil Vapor and Perched Aquifer</u>

4   DPE is currently being used to simultaneously extract soil vapors and de-water the perched
5   aquifer, which in turn expands the vertical extent of SVE in the dewatered zone.  The
6   duration of DPE activities will depend on the time required to reach soil gas shut down
7   criteria agreed to in the Final Soil Vapor Monitoring Plan.  The SVE wells and treatment
8   system began operation in February 2011.  The Phase 1 OU2 RA began full-scale operation
9   when the DPE wells and groundwater treatment system began operation in April 2012.

</div>

10   As presented in the EPA approved *Final Remedial Action Work Plan for Phase 1 Operable*
11   *Unit 2*, (AMEC, November 2009) and the *Final Addendum to the Final Remedial Action*
12   *Work Plan (Dual Phase Extraction Pilot Test Report), Phase 1 Operable Unit 2* (AMEC,
13   February 2011), cryogenic compression condensation (C3) technology for treating vapor
14   containing chlorinated VOCs has been implemented at the Site.  Pursuant to the above
15   plans, when influent vapor concentrations decreased and remained below approximately
16   100 parts per million by volume (ppmv) the emission controls system was to be switched
17   to GAC upon approval by EPA.  As previously discussed, the change from C3 to GAC was
18   implemented in February 2012.

19         a.    <u>Dewatering of the Perched Aquifer</u>

20   DPE is currently used to dewater the perched aquifer.  Extracted water from the perched
21   aquifer is conveyed to the groundwater treatment system (see Section II.A.1), where it
22   is treated and discharged to the sanitary sewer.  A practical limit of dewatering may be
23   reached, such that perched water remains in some areas and is unrecoverable by DPE.
24   When this practical limit is reached, the DPE system may be shut down, and
25   unrecoverable perched groundwater will be addressed by alternate means, including
26   but not limited to MNA and institutional controls, as appropriate, based on a feasibility
27   study and risk assessment as determined by EPA.

28         b.    <u>DPE and Vapor Monitor Wells</u>

29   Based on SVE radius of influence (ROI) information presented in the EPA approved
30   addendum to the final RAWP (AMEC, February 2011), 14 DPE wells were installed.
31   Eleven wells were constructed in the HWA and 3 wells were constructed in the DPA.
32   Operation of the DPE wells was initiated in April 2012.

33   The RA includes operation of 10 SVE wells (6 wells in the HWA and 4 wells in the
34   DPA) based on SVE ROI data.  Operation of the SVE wells and treatment system was
35   initiated in February 2011.

36         c.    <u>Treatment Compound</u>

37   The DPE treatment compound is comprised of the following:

11

252

# EXHIBIT E



1    JOHN C. CRUDEN
      Assistant Attorney General
2    Environment and Natural Resources Division

3

      CHERYL ANN LUKE, Va. Bar Number: 26331
4    Environmental Enforcement Section
      Environment and Natural Resources Division
5    United States Department of Justice
      P.O. Box 7611
6    Washington, D.C. 20044-7611
      Telephone: (202) 514-5466
7    Fax: (202) 616-2427
8    Email: cheryl.luke@usdoj.gov

9

10    Attorneys for Plaintiff United States of America

11    KAMALA D. HARRIS
       Attorney General of California
12    SARAH E. MORRISON, State Bar No. 143459
       Supervising Deputy Attorney General
13    OLIVIA W. KARLIN, State Bar No. 150432
14    Deputy Attorney General
       300 South Spring Street, Suite 1702
15    Los Angeles, CA  90013
16    Telephone: (213) 897-0473
       Fax: (213) 897-2802
17    E-Mail: olivia.karlin@doj.ca.gov

18

19    Attorneys for Plaintiff State of California
       Department of Toxic Substances Control

20

21           **UNITED STATES DISTRICT COURT**
          **CENTRAL DISTRICT OF CALIFORNIA**
22               **WESTERN DIVISION**

23    UNITED STATES OF AMERICA     )
      and STATE OF CALIFORNIA,       )    CIV. NO.:
24    DEPARTMENT OF TOXIC          )
      SUBSTANCES CONTROL,         )    COMPLAINT
25                          )

26

1

36

| | | |
|---|---|---|
| 1 |          Plaintiffs, | ) |
| 2 | v. | ) |
| | | ) |
| 3 | AC Products, Inc.; | ) |
| | A. G. Layne, Inc.; | ) |
| 4 | Alpha Corporation of Tennessee Inc.; | ) |
| | Ashland Inc.; | ) |
| 5 | Atlantic Richfield Company; | ) |
| 6 | Baker Petrolite LLC; | ) |
| | Cargill, Incorporated; | ) |
| 7 | Castrol Industrial North America Inc.; | ) |
| 8 | Chemcentral Corp.; | ) |
| | Chemical Waste Management, Inc.; | ) |
| 9 | Chevron U.S.A. Inc.; | ) |
| 10 | Coral Chemical Company; | ) |
| | D.A. Stuart Company; | ) |
| 11 | Dunn-Edwards Corporation; | ) |
| 12 | Engineered Polymer Solutions, Inc.; | ) |
| | ExxonMobil Oil Corporation; | ) |
| 13 | Gallade Chemical, Inc.; | ) |
| | Hasco Oil Company, Inc.; | ) |
| 14 | Houghton International, Inc.; | ) |
| 15 | J.H. Mitchell & Sons Distributors, Inc.; | ) |
| | Lockheed-Martin Corporation; | ) |
| 16 | Lonza Inc.; | ) |
| 17 | Lubricating Specialties Company; | ) |
| | Mathisen Oil Co., Inc.; | ) |
| 18 | Pennzoil-Quaker State Company; | ) |
| 19 | Penreco | ) |
| | PolyOne Corporation; | ) |
| 20 | PPG Industries, Inc.; | ) |
| | PTM&W Industries Inc.; | ) |
| 21 | Quaker Chemical Corporation; | ) |
| 22 | Rathon Corp.; | ) |
| | Shell Chemical LP; | ) |
| 23 | Shell Oil Company; | ) |
| | SOCO West, Inc.; | ) |
| 24 | Southern California Edison; | ) |
| 25 | Southern Counties Oil Co.; | ) |
| 26 | | |

2

37

| | |
|---|---|
| 1 | Sta-Lube LLC f/k/a Sta-Lube, Inc.;    ) |
| 2 | Stuarts' Petroleum;                    ) |
|   | Texaco Downstream Properties Inc.;     ) |
| 3 | The Boeing Company;                    ) |
|   | The Valspar Corporation;               ) |
| 4 | Union Oil Company of California; and   ) |
|   | Univar USA Inc.,                       ) |
| 5 |                                        ) |
| 6 |      Defendants.                       ) |
| 7 | _____ ) |

8      The United States of America, by authority of the Attorney General of the

9   United States and through the undersigned attorneys, acting at the request of the

10  Administrator of the United States Environmental Protection Agency ("EPA"), and

11  the State of California Department of Toxic Substances Control ("DTSC")

12

13  (collectively referred to as "Plaintiffs") allege as follows:

14                          **STATEMENT OF THE ACTION**

15      1.      This is a civil action by the United States of America for injunctive

16  relief and recovery of costs under sections 106(a) and 107 of the Comprehensive

17

18  Environmental Response, Compensation, and Liability Act ("CERCLA"),

19  42 U.S.C. §§ 9606(a) and 9607.

20      2.      This is also a civil action by DTSC for recovery of costs under

21  section 107 of CERCLA, 42 U.S.C. § 9607.

22

23      3.      Plaintiffs have incurred response costs and expect to continue to

24  incur response costs in connection with actions taken in response to releases and/or

25  threatened releases of hazardous substances at and/or from the Cooper Drum

26

                                          3

1   Company Superfund Site located in Los Angeles County, California (the "Site").

2       4.      Plaintiffs also make a claim under Section 113(g)(2) of CERCLA,

3   42 U.S.C. § 9613(g)(2), for a declaratory judgment that each of the Defendants is

4   jointly and severally liable to Plaintiffs for future response costs incurred by

5   Plaintiffs in responding to releases and/or threatened releases of hazardous

6   substances at and/or from the Site.

7

8                           **JURISDICTION AND VENUE**

9       5.      This Court has jurisdiction over the subject matter of this action,

10   and the parties to this action, pursuant to sections 106(a), 107(a) and 113(b) of

11   CERCLA, 42 U.S.C. §§ 9606(a), 9607(a) and 9613(b), and under 28 U.S.C.

12   §§ 1331 and 1345.

13       6.      Venue is proper in this district under sections 106(a) and 113(b) of

14   CERCLA, 42 U.S.C. §§ 9606(a) and 9613(b), and 28 U.S.C. § 1391(b), because

15   the claims arose, and/or the threatened and actual releases of hazardous substances

16   occurred, within this judicial district.

17

18                                **PLAINTIFFS**

19       7.      Plaintiff, the United States of America, is acting at the request of

20   the EPA, an agency of the United States.

21       8.      Plaintiff, the State of California Department of Toxic Substances

22   Control (DTSC) is a public agency of the State of California organized and

23

24

25

26

<div align="center">4</div>

existing under and pursuant to sections 58000-58018 of the California Health and Safety Code.  DTSC is the state agency responsible under state law for determining whether there has been a release and/or threatened release of a hazardous substance into the environment, and for determining the actions to be taken in response thereto.

## **DEFENDANTS**

9.      Defendants AC Products, Inc.; A. G. Layne, Inc.; Alpha Corporation of Tennessee Inc.; Ashland Inc.; Atlantic Richfield Company; Baker Petrolite LLC; Cargill, Incorporated; Castrol Industrial North America Inc.; Chemcentral Corp.; Chemical Waste Management, Inc.; Chevron U.S.A. Inc.; Coral Chemical Company; D.A. Stuart Company; Dunn-Edwards Corporation; Engineered Polymer Solutions, Inc.; ExxonMobil Oil Corporation; Gallade Chemical, Inc.; Hasco Oil Company, Inc.; Houghton International, Inc.; J.H. Mitchell & Sons Distributors, Inc.; Lockheed-Martin Corporation; Lonza Inc.; Lubricating Specialties Company; Mathisen Oil Co., Inc.; Pennzoil-Quaker State Company; Penreco; PolyOne Corporation; PPG Industries, Inc.; PTM&W Industries Inc.; Quaker Chemical Corporation; Rathon Corp.; Shell Chemical LP; Shell Oil Company; SOCO West, Inc.; Southern California Edison; Southern Counties Oil Co.; Sta-Lube LLC f/k/a Sta-Lube, Inc.; Stuarts' Petroleum; Texaco Downstream Properties Inc.; The Boeing Company; The Valspar Corporation;

5

1   Union Oil Company of California; and Univar USA Inc. (collectively,

2   "Defendants") are "persons" within the meaning of section 101(21) of CERCLA,

3   42 U.S.C. § 9601(21).

4

5                               **GENERAL ALLEGATIONS**

6          10.    The Site is approximately 2.4 acres in size and is located in South

7   Gate, a mixed commercial, industrial, residential area about ten miles southeast of

8   downtown Los Angeles.  The Site is bordered by Atlantic Avenue to the west,

9

10  Rayo Avenue to the east, and the former Tweedy Elementary School to the south.

11  The Site was the location of the Cooper Drum Company, which operated a drum

12  reconditioning business from 1974 to approximately 1993.

13         11.    Each Defendant had an ongoing business relationship with the

14  Cooper Drum Company during the time of its drum reconditioning operations at

15

16  the Site.

17         12.    During the time of Cooper Drum Company's drum reconditioning

18  operations at the Site, the business of each Defendant involved the use, storage

19

20  and/or processing of hazardous substances and/or solid wastes.  The Cooper Drum

21  Company either picked up or accepted from each Defendant used 55-gallon drums

22  that contained residues of hazardous substances and/or solid wastes.  As a result of

23  the acts of the Defendants at the Site, hazardous substances have been and continue

24  to be released and/or threatened to be released into the soil at and/or from the Site.

25

26

6

13.    The drum reconditioning process at the Site consisted of flushing and stripping the drums, repainting where necessary, and returning the drums to their owners for reuse.  Residual wastes flushed from the drums and wastes from the reconditioning process were collected in open concrete pits and trenches, resulting in contamination of the soils and groundwater beneath the Site.

14.    During the time of Cooper Drum Company's drum reconditioning operations at the Site, caustic fluids leaked from the on-Site trenches onto the property of the Tweedy Elementary School, contaminating the soils.  The Tweedy Elementary School was closed in 1988 due to the concern that children could be exposed to contamination.

15.    In 1989, the Los Angeles Department of Health Services ("LADHS") collected soil samples at the Site and found hazardous substances in the soils, including volatile organic compounds ("VOCs"), petroleum byproducts and polychlorinated biphenyls ("PCBs").

16.    The Cooper Drum Company, under the direction of the LADHS, removed contaminated soils from its property and from the property of the former Tweedy Elementary School.  Four monitoring wells were placed in the Gaspur Aquifer, the uppermost aquifer beneath the Site, and VOCs were detected in the Gaspur Aquifer.

//

7

17.     From 1996 to 2002, EPA conducted a Remedial Investigation and Feasibility Study ("RI/FS") for the Site.  In the RI/FS, EPA concluded that substantial portions of the soil and groundwater beneath the Site have been contaminated by VOCs, mainly chlorinated solvents such as trichloroethene ("TCE"), tetrachloroethene ("PCE"), and isomers of dichloroethene ("DCE") and dichloroethane ("DCA").  Other contaminants of concern are 1,4-dioxane in groundwater and polyaromatic hydrocarbons ("PAHs"), PCBs, and lead in the soil.

18.     TCE, PCE, isomers of DCE and DCA; 1,4-dioxane, PAHs, PCBs, and lead are among the Site-related chemicals used at the Defendants' facilities and transported to the Site in the course of the Defendants' business dealings with the Cooper Drum Company.

19.     TCE, PCE, isomers of DCE and DCA; 1,4-dioxane, PAHs, PCBs, and lead are hazardous substances as defined in section 101(14) of CERCLA, 42 U.S.C. § 9601(14), and 40 C.F.R. § 302.4, App. A.

20.     The resulting groundwater contamination has generally migrated from the Site in a southerly direction through the Gaspur Aquifer.  The groundwater in the Gaspur Aquifer is designated as a potential drinking water source in the Los Angeles Regional Water Quality Control Board's Water Quality Control Plan.  Several deeper groundwater aquifers contiguous to and beneath the Site are currently used for domestic purposes, including drinking water, and are

8

presently endangered by Site contaminants migrating laterally and vertically from the shallow aquifer towards and into the deeper aquifers.

21.    Pursuant to section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, in June 2001.  66 Fed. Reg. 32,235 (June 14, 2001).

22.    Pursuant to section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the RI/FS and of EPA's proposed plan for remedial action on June 11, 2002, in the *Long Beach Press-Telegram*, and held a public meeting on the RI/FS and proposed plan on June 27, 2002.  EPA executed the Record of Decision for the Site on September 27, 2002 ("ROD").

23.    The remedial action called for in the ROD addresses contaminated soil and groundwater.  Dual phase extraction was selected for treatment of VOCs in soil and perched groundwater. The ROD provides for excavation and off-Site disposal of other non-VOC contaminants in soils, including semi-volatile organic compounds, PCBs and lead, or, where excavation is not feasible, the imposition of institutional controls to prevent exposure.  The ROD prescribes extraction and treatment of groundwater for containment and remediation.  Chemical in situ treatment is also prescribed to enhance the treatment of VOCs in groundwater and to reduce the potential for other VOC plumes in the vicinity to impact the Site.

//

9

24.     The ROD is consistent with CERCLA and the National Contingency Plan, 40 C.F.R. Part 300.

25.     TCE, PCE, isomers of DCE and DCA; 1,4-dioxane, PAHs, PCBs, and lead each have come to be located at the Site.

26.     There were and are "releases" and threatened "releases" of hazardous substances from the Site within the meaning of section 101(22) of CERCLA, 42 U.S.C. § 9601(22), into the environment at and from the Site, and the Site poses numerous threats to human health and the environment.

27.     The Site is a "facility" within the meaning of section 101(9) of CERCLA, 42 U.S.C. § 9601(9) and a "site" within the meaning of Health and Safety Code Section 25323.9.

28.     Plaintiffs have incurred costs for "response" as that term is defined in section 101(25) of CERCLA, 42 U.S.C. § 9601(25), and Health and Safety Code section 25323.3, in taking actions related to the release and/or threatened release of hazardous substances at, around, and/or beneath the Site.  The Plaintiffs' response actions include, but are not limited to, the following activities: investigation; removal/remediation actions; enforcement/cost recovery; oversight; public participation; production of written reports and decision documents.

//

//

10

45

**FIRST CLAIM FOR RELIEF**

29.     Paragraphs 1-28 are realleged and incorporated herein by reference.

30.     Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), provides in pertinent part:

> In addition to any other action taken by a State or local government, when the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may require the Attorney General of the United States to secure such relief as may be necessary to abate such danger or threat, and the district court of the United States in the district in which the threat occurs shall have jurisdiction to grant such relief as the public interest and the equities of the case may require.

31.     By Executive Order 12580 of January 23, 1987, the President's functions under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), were delegated to the Administrator of EPA.

32.     EPA has determined that there is or may be an imminent and substantial endangerment to the public health or welfare or the environment because of the release and threatened releases of hazardous substances from the Site.

11

46

33.     Pursuant to section 106 of CERCLA, 42 U.S.C. § 9606, Defendants each are jointly and severally liable for the injunctive relief to perform the remedial alternatives selected by the United States for the Site.

## SECOND CLAIM FOR RELIEF

34.     Paragraphs 1-28 are realleged and incorporated herein by reference.

35.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides, in pertinent part:

(1) the owner or operator of a vessel or a facility, [and]

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, [and]

(3)     any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility . . . owned or operated by another party or entity and containing such hazardous substances, and

(4)  any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities . . . selected

12

47

by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for --

    (A)  all costs of removal or remedial action incurred by the United States Government or a State . . . not inconsistent with the national contingency plan . . .

36.    Each Defendant is a person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any party or entity, at the Site within the meaning of section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

37.    Plaintiffs have incurred and will continue to incur costs of removal and remedial actions not inconsistent with the National Contingency Plan to respond to the release or threatened release of hazardous substances at and from the Site, within the meaning of sections 101(23), (24) and (25) of CERCLA, 42 U.S.C. §§ 9601(23), (24) and (25).

38.    Defendants are jointly and severally liable to Plaintiffs for all response costs, including the costs of removal and remedial actions incurred in the past by Plaintiffs with respect to the Site, plus interest on the response costs, pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

13

39.     Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), provides in pertinent part that in any action for recovery of costs, "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

40.     Pursuant to section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), Plaintiffs are entitled to a declaratory judgment that Defendants are jointly and severally liable for further response costs incurred by Plaintiffs in connection with the Site in any subsequent action or actions by Plaintiffs to recover such costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, respectfully request that the Court:

1.     Order Defendants jointly and severally, to perform the remedial alternatives selected by the United States for the Site;

2.     Enter judgment against Defendants, jointly and severally, for all response costs incurred by the United States in connection with the Site, plus interest;

3.     Enter judgment against Defendants, jointly and severally, for all response costs incurred by DTSC in connection with the Site;

14

49

1     4.    Award pre-judgment interest on the above sums, as provided by

2  Section 107(a) of CERCLA, 42 U.S.C. § 9607(a);

3

4     5.    Enter declaratory judgment against Defendants, jointly and severally,

5  for all future costs to be incurred by Plaintiffs in connection with the Site; and

6

7     6.    Grant such other relief as this Court deems just and proper.

8

9                              Respectfully Submitted,

10                             FOR THE UNITED STATES OF AMERICA

11

12

13                             /s/ Cheryl A. Luke
                               **CHERYL A. LUKE**
14                             Environmental Enforcement Section
                               Environment and Natural Resources Division
15                             U.S. Department of Justice

16                             FOR THE STATE OF CALIFORNIA
                               DEPARTMENT OF TOXIC SUBSTANCES
17                             CONTROL

18

19

20                             /s/ Olivia W. Karlin
                               **OLIVIA W. KARLIN**
21                             Deputy Attorney General
                               Attorney for the State of California
22                             Department of Toxic Substances Control

23

24

25

26

                                    15

# EXHIBIT F

CM/ECF - California Central District

Query    Reports    Utilities    Help    Log Out

ACCO,(FFMx),CLOSED,DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
### CIVIL DOCKET FOR CASE #: 2:15-cv-09931-AB-FFM

United States of America et al v. AC Products, Inc. et al    Date Filed: 12/29/2015
Assigned to: Judge Andre Birotte Jr                          Date Terminated: 04/20/2016
Referred to: Magistrate Judge Frederick F. Mumm              Jury Demand: None
Related Cases:  2:17-cv-07836-AB-FFM                          Nature of Suit: 893 Environmental Matters
                2:18-cv-00234-AB-FFM                          Jurisdiction: U.S. Government Plaintiff
                2:19-cv-03029-AB-FFM
                2:19-cv-03007-AB-PVC
Cause: 42:6901 Environmental Cleanup Expenses

**Plaintiff**

**United States of America**                represented by   **Cheryl A Luke**
                                                              US Department of Justice
                                                              Environmental Enforcement Section
                                                              PO Box 7611
                                                              Washington, DC 20044-7611
                                                              202-514-5466
                                                              Fax: 202-616-2427
                                                              Email: cheryl.luke@usdoj.gov
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of California, Department of Toxic    represented by   **Olivia Karlin**
Substances Control**                                          CAAG - Office of the Attorney General
                                                              California Department of Justice
                                                              300 South Spring Street Suite 1700
                                                              Los Angeles, CA 90013
                                                              213-897-0473
                                                              Fax: 213-897-2802
                                                              Email: Olivia.Karlin@doj.ca.gov
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**AC Products, Inc.**                        represented by   **Daniel E Vineyard**
                                                              Jackson Walker LLP
                                                              1401 McKinney Street Suite 1900
                                                              Houston, TX 77010
                                                              713-752-4277
                                                              Fax: 713-308-4177

https://ecf.cacd.uscourts.gov/cgi-bin/DktRpt.pl?714805042023937-L_1_0-1          1/8

52

| Date Filed | # | Docket Text |
|---|---|---|
| 12/29/2015 | 1 | COMPLAINT No Fee Required - US Government, filed by Plaintiff United States of America. (Attorney Cheryl A Luke added to party United States of America(pty:pla)) (Luke, Cheryl) (Entered: 12/29/2015) |
| 12/29/2015 | 2 | CIVIL COVER SHEET filed by Plaintiff United States of America. (Luke, Cheryl) (Entered: 12/29/2015) |
| 12/29/2015 | 3 | NOTICE OF LODGING filed re Complaint (Attorney Civil Case Opening) 1 (Attachments: # 1 Consent Decree, # 2 Consent Decree Signature Pages, # 3 Consent Decree Appendix A, # 4 Consent Decree Appendix B, # 5 Consent Decree Appendix C, # 6 Consent Decree Appendix D, Part 1, # 7 Consent Decree Appendix D, Part 2, # 8 Consent Decree Appendix E, # 9 Consent Decree Appendix F, # 10 Consent Decree Appendix G, # 11 Consent Decree Appendix H, # 12 Consent Decree Appendix I, # 13 Consent Decree Appendix J)(Luke, Cheryl) (Entered: 12/29/2015) |
| 12/29/2015 | 4 | NOTICE OF ASSIGNMENT to District Judge Andre Birotte Jr and Magistrate Judge Frederick F. Mumm. (rn) (Entered: 12/29/2015) |
| 12/29/2015 | 5 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (rn) (Entered: 12/29/2015) |
| 12/30/2015 | 6 | PROOF OF SERVICE filed by plaintiff United States of America, re Complaint (Attorney Civil Case Opening) 1 served on 12/30/2015. (Luke, Cheryl) (Entered: 12/30/2015) |
| 01/05/2016 | 7 | NOTICE of Amendment of Prior Filing [Doc. #3] filed by plaintiff United States of America. (Attachments: # 1 Signature page to be inserted in Proposed Consent Decree) (Luke, Cheryl) (Entered: 01/05/2016) |
| 01/19/2016 | 8 | NOTICE of Appearance filed by attorney Daniel E Vineyard on behalf of Defendants AC Products, Inc., Ashland Inc., Atlantic Richfield Company, Baker Petrolite LLC, Cargill, Incorporated, Castrol Industrial North America Inc., Chemcentral Corp., Chemical Waste Management, Inc., Chevron U.S.A. Inc., Coral Chemical Company, Dunn-Edwards Corporation, Engineered Polymer Solutions, Inc., ExxonMobil Oil Corporation, Hasco Oil Company, Inc., Lonza Inc., Lubricating Specialties Company, Pennzoil-Quaker State Company, Penreco, Quaker Chemical Corporation, SOCO West, Inc., Shell Chemical LP, Shell Oil Company, Southern Counties Oil Co., Texaco Downstream Properties Inc., The Valspar Corporation, Union Oil Company of California, Univar USA Inc. (Attorney Daniel E Vineyard added to party AC Products, Inc.(pty:dft), Attorney Daniel E Vineyard added to party Ashland Inc.(pty:dft), Attorney Daniel E Vineyard added to party Atlantic Richfield Company(pty:dft), Attorney Daniel E Vineyard added to party Baker Petrolite LLC(pty:dft), Attorney Daniel E Vineyard added to party Cargill, Incorporated(pty:dft), Attorney Daniel E Vineyard added to party Castrol Industrial North America Inc.(pty:dft), Attorney Daniel E Vineyard added to party Chemcentral Corp.(pty:dft), Attorney Daniel E Vineyard added to party Chemical Waste Management, Inc.(pty:dft), Attorney Daniel E Vineyard added to party Chevron U.S.A. Inc.(pty:dft), Attorney Daniel E Vineyard added to party Coral Chemical Company(pty:dft), Attorney Daniel E Vineyard added to party Dunn-Edwards Corporation(pty:dft), Attorney Daniel E Vineyard added to party Engineered Polymer Solutions, Inc.(pty:dft), Attorney Daniel E Vineyard added to party ExxonMobil Oil Corporation(pty:dft), Attorney Daniel E Vineyard added to party Hasco Oil Company, Inc.(pty:dft), Attorney Daniel E Vineyard added to party Lonza Inc. (pty:dft), Attorney Daniel E Vineyard added to party Lubricating Specialties Company(pty:dft), Attorney Daniel E Vineyard added to party Pennzoil-Quaker State Company(pty:dft), Attorney Daniel E Vineyard added to party Penreco(pty:dft), Attorney Daniel E Vineyard added to party Quaker Chemical Corporation(pty:dft), Attorney Daniel |

| | | |
|---|---|---|
| | | E Vineyard added to party SOCO West, Inc.(pty:dft), Attorney Daniel E Vineyard added to party Shell Chemical LP(pty:dft), Attorney Daniel E Vineyard added to party Shell Oil Company(pty:dft), Attorney Daniel E Vineyard added to party Southern Counties Oil Co. (pty:dft), Attorney Daniel E Vineyard added to party Texaco Downstream Properties Inc. (pty:dft), Attorney Daniel E Vineyard added to party The Valspar Corporation(pty:dft), Attorney Daniel E Vineyard added to party Union Oil Company of California(pty:dft), Attorney Daniel E Vineyard added to party Univar USA Inc.(pty:dft))(Vineyard, Daniel) (Entered: 01/19/2016) |
| 03/02/2016 | 9 | TEXT ONLY ENTRY: (IN CHAMBERS) ORDER by Judge Andre Birotte Jr.: On December 29, 2015, Plaintiffs' lodged a Consent Decree with the Court and requested that the Consent Decree not be entered until further notice (Dkt. No. 3 ). In order to permit the Court to monitor this action, the Court ORDERS Plaintiffs' counsel to file a Status Report by March 18, 2016. IT IS SO ORDERED. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (cb) (Entered: 03/02/2016) |
| 03/04/2016 | 10 | REQUEST to Approve Consent Judgment *UNOPPOSED Request to Enter Consent Decree* filed by Plaintiff United States of America. Motion set for hearing on 4/4/2016 at 10:00 AM before Judge Andre Birotte Jr. Request set for hearing on 4/4/2016 at 10:00 AM before Judge Andre Birotte Jr. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Karen Jurist, # 3 Declaration of Lori Parnass) (Luke, Cheryl) (Entered: 03/04/2016) |
| 03/08/2016 | 11 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Unopposed Request to Enter Consent Decree 10 . The following error(s) was found: Local Rule 11-8 Memorandum/brief exceeding 10 pages shall contain table of contents. In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. You need not take any action in response to this notice unless and until the court directs you to do so. (iv) (Entered: 03/08/2016) |
| 03/18/2016 | 12 | STATUS REPORT filed by Plaintiff United States of America. (Luke, Cheryl) (Entered: 03/18/2016) |
| 03/30/2016 | 13 | (IN CHAMBERS) ORDER TAKING UNOPPOSED REQUEST TO ENTER CONSENT DECREE (DKT. 10 ) UNDER SUBMISSION by Judge Andre Birotte Jr.: The Court has considered the matters raised with respect to the Motion and has concluded that pursuant to Local Rule 7.15, the matter can be decided without oral argument. The Court advises counsel that the Motion, noticed for hearing on April 4, 2016, has been taken under submission and off its motion calendar. No appearance by counsel is necessary. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (cb) TEXT ONLY ENTRY (Entered: 03/30/2016) |
| 04/20/2016 | 14 | MINUTES [In Chambers] Order Granting Unopposed Request to Enter Consent Decree 10 by Judge Andre Birotte Jr. In accordance with the foregoing discussion, the Court finds that the proposed consent decree is adequate, fair, and reasonable and that it furthers the goals of CERCLA. Plaintiffs' request for judicial approval and entry of the Consent Decree is hereby GRANTED. IT IS SO ORDERED. (lom) (Entered: 04/20/2016) |
| 04/20/2016 | 15 | CONSENT DECREE by Judge Andre Birotte Jr.: The objectives of the Parties in entering into this Consent Decree are to protect public health and welfare and the environment by the design and implementation of response actions at the Cooper Drum Company Superfund Site ("Site") by Performing Settling Defendants, to pay response costs of Plaintiffs, and to resolve the claims of Plaintiffs stated in the Complaint against Settling Defendants. The Remedial Action is being conducted in three phases. EPA has approved work plans submitted by the Performing Settling Defendants for Phase 1 Soil and Phase 1 Groundwater and Addenda that described the remedial work to be performed for the soil |

(Operable Unit 2, or "OU2") and groundwater (Operable Unit 1 or "OU1"). Phases 2 and 3 will entail preparation of a single work plan for each phase. The Phase 2 Remedial Action Work Plan shall include details for an OU1 downgradient containment and treatment system or the alternative Remedial Action selected by The United States of America, on behalf of the Administrator of the United States Environmental Protection Agency ("EPA") in a Consent Decree ROD Amendment after evaluation of monitored natural attenuation ("MNA") and, if appropriate, the Focused Feasibility Study as set out in the SOW. The Phase 3 Remedial Action Work Plan shall include details for OU2 soil excavation and disposal. In order to ensure the full and final completion of the Work, Performing Settling Defendants shall establish and maintain a performance guarantee, initially in the amount of $15,000,000.00, for the benefit of the EPA. Within 30 days after the Effective Date, Performing Settling Defendants shall pay to EPA $2,617,266.14 in payment for Past Response Costs and to the State of California Department of Toxic Substances Control ("DTSC") $53,599.49 in payment for Past Response Costs. Upon entry of this Consent Decree, Unilateral Order 2009-07 is terminated as to such Settling Defendants. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, DTSC and Settling Defendants. The Court enters this judgment as a final judgment under Federal Rules of Civil Procedure 54 and 58. See document for further details. ( MD JS-6. Case Terminated ) (gk) (Entered: 04/21/2016)

# EXHIBIT G

JS-6



1  JEFFREY H. WOOD
2  Acting Assistant Attorney General
   Environment and Natural Resources Division
3  CHERYL ANN LUKE
4  E-mail:cheryl.luke@usdoj.gov
   Virginia State Bar No. 26331
5  Environmental Enforcement Section
6  Environment and Natural Resources Division
   U.S. Department of Justice
7  P.O. Box 7611
8  Washington, DC 20044-7611
   Tel. (202) 514-5466
9

10              IN THE UNITED STATES DISTRICT COURT

11

12          FOR THE CENTRAL DISTRICT OF CALIFORNIA

13

14  UNITED STATES OF AMERICA,

15          Plaintiff,

16          v.                              Civ. A. No.  2:17-cv-7836

17

18  COOPER LIVING TRUST,
    COOPER PROPERTIES, LP,
19

20          Defendants.

21

22

23

24                      **CONSENT DECREE**

25

26

27

28

57

1

<u>TABLE OF CONTENTS</u>

2

I.      Background.............................................................................................. 1

3

II.     Jurisdiction............................................................................................... 3

4

III.    Parties Bound........................................................................................... 4

5

IV.    Definitions ............................................................................................... 4

6

V.     Statement of Purpose ............................................................................... 8

7

VI.    Payment by Settling Defendants ............................................................ 10

8

VII.   Failure to Comply with Consent Decree Requirements............................ 11

9

VIII.  Access and Institutional Controls .......................................................... 12

10

IX.    Covenant by Plaintiff............................................................................. 17

11

X.     Reservation of Rights ............................................................................ 18

12

XI.    Covenants by Settling Defendants .......................................................... 20

13

XII.   Effect of Settlement: Contribution Protection........................................ 22

14

XIII.  Access to Information............................................................................. 24

15

XIV.  Retention of Records ............................................................................. 26

16

XV.   Notices and Submissions ....................................................................... 27

17

XVI.  Retention of Jurisdiction........................................................................ 28

18

XVII. Appendices .......................................................................................... 29

19

XVIII. Lodging and Opportunity for Public Comment ....................................... 29

20

XIX.  Signatories/Service ............................................................................... 29

21

XX.   Termination Order ................................................................................. 31

22

XXI.  Final Judgment ..................................................................................... 31

23

24

25

26

27

28

ii

I.  Background

A.      The United States of America ("United States" or "Plaintiff"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), has concurrently filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607 against Cooper Living Trust and Cooper Properties, LP ("Settling Defendants").

B.      The United States in its complaint seeks, inter alia, payment of costs incurred by EPA for response actions taken or to be taken in connection with the release or threatened release of hazardous substances at and from the Cooper Drum Company Superfund Site in South Gate, Los Angeles County, California (the "Site"), and performance by defendants of certain further response actions at the Site.

C.      Settling Defendants do not admit any liability to Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment.

D.      A Unilateral Administrative Order No. 2009-07 (the "Order") was issued on February 11, 2009 to the Settling Defendants and other responsible

1

parties in order to implement the Record of Decision ("ROD") for the Cooper Drum Site. A group of responsible parties (the "performing parties") conducted the remedial action under the Order. A Consent Decree entered on April 20, 2016 terminated the Order as to the performing parties. The Settling Defendants were not performing parties and have remained subject to the Order. The Order is being terminated with regard to the Settling Defendants pursuant to Section XX of this Consent Decree.

E.      The Site occupies one of two parcels of land owned by Settling Defendants. Settling Defendant Cooper Living Trust is the owner of the parcel which includes the Site, known as Assessor's Parcel No. 6222-005-032 in the records of Los Angeles County, California (the "Trust Parcel"). Settling Defendants Cooper Living Trust and Cooper Properties, LP are the owners of the parcel adjacent to the Superfund Site, known as Assessor's Parcel No. 6222-005-031 in the records of Los Angeles County, California (the "Property"). The Lot Lines of the Trust Parcel and the Property (collectively, "the Parcels") were adjusted in 2015 by City of South Gate, California Lot Line Adjustment No. 93. The Trust Parcel, as so adjusted, contains the real property upon which the drum reconditioning operations from which hazardous substances allegedly have been released were formerly conducted and at which the remedial action for the Site is being conducted.  The Property, as so adjusted, is subject to a contract for sale and

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I certify that on January 15, 2021, I caused the foregoing **SELECTED EXCERPTS FROM DOCUMENTS IN REQUEST FOR JUDICIAL NOTICE** to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notifications of such filings to all parties.

Dated:  January 15, 2021                    LOEB & LOEB LLP


                                            By: _____
                                                Albert M. Cohen

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

20197966.1
236258-10001

CERTIFICATE OF SERVICE
CASE NO.  2:19-cv-03007-AB-JPR

61