Daniel E. Vineyard (SBN 121132)
Chevazz G. Brown (*pro hac vice*)
Carolyn L. Campion (*pro hac vice*)
**JACKSON WALKER LLP**
1401 McKinney, Suite 1900
Houston, Texas  77010
(713) 752-4200 – Telephone
(713) 752-4221 – Fax
dvineyard@jw.com
cgbrown@jw.com
ccampion@jw.com

*Attorneys for Plaintiff*
*Cooper Drum Cooperating Parties Group*

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| COOPER DRUM COOPERATING PARTIES GROUP,<br><br>*Plaintiff*,<br><br>v.<br><br>ACME KUSTOM FIT, INC.  ET AL.<br><br>*Defendants*.<br><br>and Related Counterclaims, Cross-Claims and Third-Party Complaints | CASE NO. 2:19-cv-03007-AB-PVC<br><br>Judge: Honorable André Birotte, Jr.<br><br>**PLAINTIFF COOPER DRUM COOPERATING PARTIES GROUP'S THIRD AMENDED COMPLAINT** |

THIRD AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I. STATEMENT OF THE ACTION ...................................................................1
II. JURISDICTION AND VENUE ......................................................................2
III. PARTIES ..........................................................................................................2
    **A.** Plaintiff ..................................................................................................2
    **B.** Defendants .............................................................................................3
        a. Customer Defendants ...................................................................3
        b. Neighboring Defendants ..............................................................4
IV. GENERAL ALLEGATIONS ..........................................................................6
V. ALLEGATIONS AGAINST CUSTOMER DEFENDANTS .........................9
VI. ALLEGATIONS AGAINST NEIGHBORING DEFENDANTS .................10
VII. CLAIM ONE FOR RELIEF: CERCLA § 107 .............................................10
VIII. CLAIM TWO FOR RELIEF: CERCLA § 113 ............................................11
IX. CLAIM THREE FOR RELIEF: DECLARATORY JUDGMENT ..............12
X. CLAIM FOUR FOR RELIEF: CALIFORNIA HEALTH AND SAFETY CODE CONTRIBUTION AND/OR INDEMNITY .....................13
XI. CLAIM FIVE FOR RELIEF: EQUITABLE INDEMNITY ........................13
XII. CLAIM SIX FOR RELIEF: PUBLIC NUISANCE .....................................14
XIII. CLAIM SEVEN FOR RELIEF: PRIVATE NUISANCE .............................14
XIV. CLAIM EIGHT FOR RELIEF: CONTINUING TRESPASS ......................15
XV. PRAYER FOR RELIEF ................................................................................16

The Cooper Drum Cooperating Parties Group (the "CDCPG"), an unincorporated association of potentially responsible parties ("PRPs") for the Cooper Drum Company Superfund Site in South Gate, Los Angeles County, California (the "Cooper Drum Site," as defined by the Cooper Drum "Consent Decree"), alleges as follows:

## I. STATEMENT OF THE ACTION

1. This is a civil action brought by the CDCPG under §§ 107(a) and 113(f), 42 U.S.C. §§ 9607(a) and 9613(f), of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), for cost recovery and contribution from Defendants for response costs the CDCPG has incurred and will incur in connection with the remediation of the Cooper Drum Site. Plaintiff also seeks contribution and/or indemnity under Health and Safety Code §§ 25325.5 and 25363(e). Additionally, Defendants are liable under California state law for claims for continuing trespass, continuing public nuisance, and continuing private nuisance.

2. The CDCPG also seeks a declaration, pursuant to 28 U.S.C. § 2201 and CERCLA § 113(g), 42 U.S.C. § 9613(g), as to Defendants' present and future liability.

3. The CDCPG further seeks equitable indemnity from Defendants under California state law.

4. The Cooper Drum Site is the location of a former drum refurbishment facility at which the United States Environmental Protection Agency ("EPA") and the California Department of Toxic Substances Control ("DTSC") has determined there were releases of hazardous substances. In furtherance of their efforts to address the Cooper Drum Site, EPA and DTSC filed a lawsuit against the members of the

CDCPG and others alleging certain causes of action under CERCLA.[1] The CDCPG negotiated with EPA and DTSC and entered into a judicially approved Consent Decree. Prior to and pursuant to the Consent Decree, the CDCPG has incurred response costs as a result of alleged releases and/or threatened releases of hazardous substances at the Cooper Drum Site. To date, those response costs exceed $18 million, and it is anticipated, at a minimum, an additional $15 million will be needed to complete the remediation of the Cooper Drum Site.

## II.     JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter of this action and over Defendants pursuant to 28 U.S.C. §§ 1331, 1332, and 1367 and CERCLA §§ 107 and 113(b), 42 U.S.C. §§ 9607 and 9613(b).

6.     Venue is proper in this district under CERCLA § 113(b), 42 U.S.C. § 9613(b) and 28 U.S.C. § 1391(b) and (c) because the alleged releases and threatened releases of hazardous substances that give rise to this Complaint occurred in the Western Division of the Central District of California.

## III.     PARTIES

**A.     Plaintiff**

7.     Plaintiff, the CDCPG,[2] is an unincorporated association of PRPs for the Cooper Drum Site located at 9316 Atlantic Avenue, South Gate, California 90280.

---

[1]     An action styled as *United States of America, et al. v. AC Products, Inc., et al*, Case No. 2:15-cv-09931, U.S. District Court, Central District of Calif., Western Division.

[2]     The CDCPG includes: AC Products, Inc., Ashland Inc., Atlantic Richfield Company, Baker Petrolite LLC, Cargill, Incorporated, Castrol Industrial North America, Inc., Chemical Waste Management, Inc., Chevron U.S.A. Inc., Coral Chemical Company, Dunn-Edwards Corporation, ExxonMobil Oil Corporation, Hasco Oil Company, Inc., Lonza Inc., Lubricating Specialties Company, Pennzoil-Quaker State Company (for itself and for Penreco), Quaker Chemical Corporation, Shell Chemical LP, Shell Oil Company, SOCO West, Inc., Southern Counties Oil Co., a California corporation, and Southern Counties Oil Co., a California limited partnership, Texaco Downstream Properties Inc., The Valspar Corporation and its wholly owned subsidiary, Engineered Polymer Solutions, Inc., Union Oil Company of California, and Univar

2

THIRD AMENDED COMPLAINT

**B.     Defendants**

8.     Each Defendant listed below is a "person" within the meaning of CERCLA §101(21), 42 U.S.C. § 9601(21).  Moreover, each Defendant, or a predecessor, (1) arranged for disposal or treatment, and/or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by each such Defendant to the Cooper Drum Site ("Customer Defendants") and/or (2) owned or operated facilities neighboring the Cooper Drum Site on which releases of hazardous substances occurred that have migrated to the Cooper Drum Site within the meaning of CERCLA § 107(a), 42 U.S.C. § 9607(a) ("Neighboring Defendants").

9.     Certain Defendants are each liable for releases and threatened releases of hazardous substances because of certain shared legal theories.  Accordingly, and for ease of adjudication, Defendants are subdivided into the below-named sub-headings.  The Complaint will refer to each of these sub-headings, and when so doing, will be referencing each named Defendant that appears below the corresponding subheading.

   **a.     *Customer Defendants***

10.     On information and belief, the following Customer Defendants had, or succeeded to an entity that had, an ongoing business relationship with the Cooper Drum Company during the time of the Cooper Drum Company's drum reconditioning operations at the Cooper Drum Site.

11.     Defendant Best Tape, Inc. is a California corporation with its principal place of business located at 4501 Via Vistosa, Santa Barbara, California 93110.  On information and belief, Best Tape, Inc. is or may be a successor to Seam Master Industries.  Best Tape, Inc. has been served and has made an appearance in the case.

---

USA Inc. on behalf of itself and Chemcentral Corp.  Each member company has executed a written assignment that assigns each member's claims that are the subject of this lawsuit to the CDCPG.

3
THIRD AMENDED COMPLAINT

**b.** *<u>Neighboring Defendants</u>*

12. On information and belief, the following Neighboring Defendants owned or operated facilities on which releases of hazardous substances occurred, and those releases have migrated to the Cooper Drum Site. On information and belief, Neighboring Defendants also include current owners and operators of the Cooper Drum Site.

13. Defendant CARERNCAR, LLC is a California limited liability company with its principal place of business located at 8990 Atlantic Avenue, South Gate, California 90280. On information and belief, CARERNCAR, LLC is the current owner of property located at 9309 Rayo Avenue and 8990 Atlantic Avenue, South Gate, California 90280. CARERNCAR, LLC may be served through its counsel or registered agent.

14. Defendant ERCASA, LLC is a California limited liability company with its principal place of business located at 8990 Atlantic Avenue, South Gate, California 90280. On information and belief, ERCASA, LLC is the current owner of property located at 9309 Rayo Avenue and 8990 Atlantic Avenue, South Gate, California 90280. ERCASA, LLC may be served through its counsel or registered agent.

15. Defendant Armstrong Flooring, Inc. is a Delaware corporation with its principal place of business located at 2500 Columbia Avenue, Lancaster, Pennsylvania, 17603. On information and belief, Armstrong Flooring, Inc. owned and operated on property located at 5037 Patata Street, South Gate, California 90280. Armstrong Flooring, Inc. may be served through may be served through its counsel or registered agent.

16. Defendant ACME Kustom Fit, Inc. is a California corporation formerly located at 8990 Atlantic Avenue, South Gate, California 90280. On information and belief, ACME Kustom Fit, Inc. is a successor to Kustom Fit Manufacturing

Company also known as Custom Fit Manufacturing Company. ACME Kustom Fit, Inc. may be served through its officer and director, Ronald D. Belk, wherever he may be found.

17. Defendant Best Tape, Inc. is a California corporation with its principal place of business located at 4501 Via Vistosa, Santa Barbara, California 93110. On information and belief, Best Tape, Inc. is or may be a successor to Seam Master Industries. Best Tape, Inc. has been served and has made an appearance in the case.

18. Defendant Crown Beverage Packaging, LLC has been served and has made an appearance in the case. On information and belief, Crown Beverage Packaging, LLC is a successor to Continental Can Company, Betner Company, and Shellmar Products.

19. Defendant ELG Metals, Inc. has been served and has made an appearance in the case. On information and belief, ELG Metals, Inc. is a successor to ELG Metals West Coast, Inc.

20. Defendant Henkel Consumer Goods, Inc., as successor by merger to The Dial Corporation, has been served and has made an appearance in the case.

21. Defendant Metal Management, Inc. is a Delaware corporation with its principal place of business located at 500 N. Dearborn St., Suite 405, Chicago, Illinois 60610. On information and belief, Metal Management, Inc. is a successor to the McLeod Group of Companies previously headquartered in South Gate, California. Metal Management, Inc. may be served through its registered agent, Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808, or wherever it may be found.

22. Defendant TW Tedesco Properties, L.P., also known as "Tedesco Leasing, L.P." and/or "Tedesco Leasing," is a California limited liability company with its principal place of business located at 4 Rocky Point Rd., Corona Del Mar, California 92625. On information and belief, TW Tedesco Properties, L.P. is the

owner of the property located at 4933 Firestone Blvd., South Gate, California 90280. TW Tedesco Properties, L.P. has been served and has made an appearance in the case. On information and belief, TW Tedesco Properties, L.P. leased the property during its ownership to numerous third-party defendants involved in chrome plating. At least one of these chrome-related defendants, Mondo Chrome, admitted to environmental crimes involving the unlawful disposal of hazardous substances.

23. Defendant Viad Corporation has been served and has made an appearance in the case. On information and belief, Viad Corporation is the successor to the old Dial Corporation (an Arizona corporation), Purex Corporation, and Purex Rubbish Disposal Company.

24. Defendant Traxx Corporation is a California corporation with its principal place of business located at 1201 E. Lexington Ave., Pomona, California 91766. On information and belief, Traxx Corporation is a successor to Seam Master Industries. Traxx Corporation has been served and has made an appearance in the case.

### IV.   GENERAL ALLEGATIONS

25. The Cooper Drum Site is a 2.4 acre "facility" within the meaning of CERCLA § 101(9), 42 U.S.C. § 9601(9) in South Gate, a mixed commercial, industrial, residential area about ten miles southeast of downtown Los Angeles. The Cooper Drum Site is bordered by Atlantic Avenue to the west, Rayo Avenue to the east, and the former Tweedy Elementary School to the south.

26. From 1941 until 1993, various business entities reconditioned steel drums at the Cooper Drum Site. During this period, specifically from 1974 to until approximately 1993, the Cooper Drum Company operated a drum reconditioning business at the Cooper Drum Site.

27. During the time of the Cooper Drum Company's drum reconditioning operations at the Cooper Drum Site, the Defendants' businesses involved the use, storage and/or processing of hazardous substances and/or solid wastes.

28. The Cooper Drum Company either picked up or accepted from Customer Defendants 55-gallon drums that EPA has alleged contained residues of hazardous substances and/or solid wastes.

29. The drum reconditioning process at the Cooper Drum Site included flushing and stripping the drums, repainting where necessary, and returning the drums to their owners for reuse. Wastes that resulted from flushing the drums and wastes from the reconditioning process allegedly were collected in open concrete pits and trenches on the Cooper Drum Site, which EPA alleges resulted in contamination of the soils and groundwater at the Cooper Drum Site.

30. During the Cooper Drum Company's drum reconditioning operation at the Cooper Drum Site, caustic fluids allegedly leaked from the trenches onto the property of the Tweedy Elementary School contaminating the soils. The Tweedy Elementary School was closed in 1988 due to exposure concerns.

31. In 1989, the Los Angeles Department of Health Services ("LADHS") collected soil samples at the Cooper Drum Site and found hazardous substances in the soils, including volatile organic compounds ("VOCs"), petroleum byproducts and polychlorinated biphenyls ("PCBs").

32. The Cooper Drum Company, under the direction of the LADHS, removed contaminated soils from its property and from the property of the former Tweedy Elementary School. Four monitoring wells were placed in the Gaspur Aquifer, the uppermost aquifer beneath the Cooper Drum Site; VOCs were subsequently detected in the Gaspur Aquifer.

33. From 1996 to 2002, EPA conducted a Remedial Investigation and Feasibility Study ("RI/FS") for the Cooper Drum Site. In the RI/FS, EPA concluded

that substantial portions of the soil and groundwater beneath the Cooper Drum Site were contaminated by VOCs, including chlorinated solvents such as trichloroethene ("TCE"), tetrachloroethene ("PCE"), and isomers of dichloroethene ("DCE") and dichloroethane ("DCA"). Other contaminants of concern are 1,4-dioxane in groundwater, and polyaromatic hyrdocarbons ("PAHs"), PCBs, and lead in the soil.

34. TCE, PCE, isomers of DCE and DCA, 1,4-dioxane, PAHs, PCBs, and lead are hazardous substances as defined in CERCLA § 101(14), 42 U.S.C. § 9601(14) and 40 C.F.R. § 302.4, App. A. and are among the Cooper Drum Site-related chemicals used at Defendants' facilities and in the course of their business operations.

35. In 2001, EPA placed the Cooper Drum Site on the National Priorities List and soon after, in 2002, executed a Record of Decision ("ROD") which sought to address contaminated soil and groundwater at the Cooper Drum Site.

36. In 2016, the members of the CDCPG voluntarily entered into a Consent Decree with both EPA and DTSC in which it agreed to reimburse certain costs and perform various response actions at the Cooper Drum Site. The member companies have assigned their rights to cost recovery and contribution under the Consent Decree to the CDCPG. As such, the CDCPG is entitled to seek relief from other PRPs of the Cooper Drum Site including under CERCLA § 113(f), 42 U.S.C. § 9613(f).

37. The CDCPG has incurred and will continue to incur response costs consistent with the National Contingency Plan in responding to alleged releases and threatened releases of hazardous substances that have come to be located at the Cooper Drum Site.

38. The CDCPG has incurred necessary and recoverable costs consistent with the National Contingency Plan in addition to and apart from the CDCPG's

obligations under both the previous CERCLA § 106, 42 U.S.C. § 9606 Unilateral Administrative Order and the Consent Decree.

39. Further, there were and are "releases" and threatened "releases" of hazardous substances into the environment within the meaning of CERCLA § 101(22), 42 U.S.C. § 9601(22), at nearby facilities which have migrated to the Cooper Drum Site.

40. The Cooper Drum Site and the real property owned by Neighboring Defendants (whether in the past or at present) are "facilities" within the meaning of CERCLA § 101(9), 42 U.S.C. § 9601(9). Per *Castaic Lake Water Agency v. Whittaker Corp.*,[3] when contaminated ground water from neighboring facilities comes to be found on another facility, those persons responsible under CERCLA for the facility where the initial release occurred are liable for the cleanup where the releases have come to be located.

## V. ALLEGATIONS AGAINST CUSTOMER DEFENDANTS

41. In their lawsuit against the members of the CDCPG, EPA and DTSC alleged that "each Defendant is a person who by contract, agreement or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any party or entity at the Site within the meaning of CERCLA section 107(a)(3), 42 U.S.C. § 9607(a)."[4] Upon information and belief, Customer Defendants had business relationships with the Cooper Drum Company which mirrored, in all relevant respects, that of the CDCPG members.

42. Customer Defendants had an ongoing business relationship with the Cooper Drum Company during the time of the Cooper Drum Company's drum

---

[3]  272 F. Supp. 2d 1053 (C.D. Cal. 2003).

[4]  Complaint of the United States of America, ECF. 1, Case No. 2:15-cv-09931, U.S. District Court, Central District of Calif., Western Division at ¶ 36.

9
THIRD AMENDED COMPLAINT

reconditioning operations at the Cooper Drum Site. Therefore, upon information and belief, hazardous substances from the Customer Defendants were released at the Cooper Drum Site in the course of the Cooper Drum Company's drum reconditioning process.

## VI. ALLEGATIONS AGAINST NEIGHBORING DEFENDANTS

43. Neighboring Defendants owned and operated facilities (whether past or present) in close proximity to the Cooper Drum Site whose normal business operations involved the use, storage and/or processing of hazardous substances and/or solid wastes. Upon information and belief, hazardous substances were released in the course of Neighboring Defendants' operations at their respective facilities and have now come to be found on and under the Cooper Drum Site.

44. As documented in the Consent Decree and Statement of Work, multiple EPA reports "document impacts to the [Cooper Drum] Site from upgradient plumes originating from off-site sources." For instance, the Statement of Work directed the CDCPG to consider reinjection to '"reduce the intrusion' of upgradient [Contaminants of Concern] from off-site sources."

## VII. CLAIM ONE FOR RELIEF: CERCLA § 107

*(As to all Defendants)*

45. The paragraphs above are re-alleged and incorporated here by reference.

46. CERCLA § 107(a), 42 U.S.C. § 9607(a), provides, in part:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—
>
> (1) the owner and operator of a vessel or a facility,
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> (3) any person who by contract, agreement, or otherwise

10
THIRD AMENDED COMPLAINT

> arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances,…shall be liable for—
>
> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan…

47. The CDCPG has incurred and will continue to incur necessary costs of response within the meaning of CERCLA §§ 101(25), 42 U.S.C. §§ 9601(25) consistent with the National Contingency Plan to respond to the alleged release or threatened release of hazardous substances at the Cooper Drum Site.

48. All named Defendants are liable under CERCLA § 107(a), 42 U.S.C. § 9607, for all eligible response costs plus interest incurred by the CDCPG in connection with the Cooper Drum Site.

## VIII.  **CLAIM TWO FOR RELIEF: CERCLA § 113**
*(As to all Defendants)*

49. The paragraphs above are re-alleged and incorporated here by reference.

50. CERCLA § 113(f), 42 U.S.C. § 9613(f), provides, in part:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title.

51. The United States has previously brought an action against the members of the CDCPG pursuant to 9607(a).

52. The CDCPG has incurred and will continue to incur costs eligible for contribution for remedial actions consistent with the National Contingency Plan to respond to the alleged release or threatened release of hazardous substances at the

11
THIRD AMENDED COMPLAINT

Cooper Drum Site within the meaning of CERCLA §§ 101(23-25), 42 U.S.C. §§ 9601(23-25).

53. All named Defendants are liable to the CDCPG pursuant to CERCLA § 113(f), 42 U.S.C. § 9613(f), for all costs eligible for contribution, plus interest on those costs eligible for contribution, incurred by the CDCPG in connection with the Cooper Drum Site.

## IX. CLAIM THREE FOR RELIEF: DECLARATORY JUDGMENT
*(As to all Defendants)*

54. The paragraphs above are re-alleged and incorporated here by reference.

55. A present, actual, and justiciable controversy exists between the CDCPG and Defendants concerning the nature and extent of the obligation of Defendants to pay for anticipated future response costs or damages in connection with the Cooper Drum Site.

56. In connection with the CDCPG's claims for both cost recovery and contribution, CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), permits the Court to "enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

57. Pursuant to CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, the CDCPG is entitled to a judgment declaring that Defendants are liable for future response costs or damages to be incurred in connection with the Cooper Drum Site, including amounts attributable to any "orphan shares"[5] not elsewhere attributed and applicable interest as provided for in CERCLA § 107(a), 42 U.S.C. § 9607(a).

---

[5] "Orphan shares" means those shares for response costs attributable to PRPs who either are insolvent or cannot be located or identified. *See Pinal Creek Group v. Newmont Mining Corp.*,

## X.    CLAIM FOUR FOR RELIEF: CALIFORNIA HEALTH AND SAFETY CODE CONTRIBUTION AND/OR INDEMNITY

*(As to all Defendants)*

58. The paragraphs above are re-alleged and incorporated here by reference.

59. Defendants are liable persons as defined by the Health and Safety Code § 25323.5 and are thereby liable in contribution and/or indemnity for response costs pursuant to Health and Safety Code § 25363(e).

60. In the interest of an expeditious cleanup and acting in good faith, the CDCPG has incurred and will incur costs necessary to response to the alleged release or threatened release of hazardous substances at the Cooper Drum Site consistent with the National Contingency Plan.

61. Defendants are liable to the CDCPG for contribution and/or indemnity under Health and Safety Code §§ 25325.5 and 25363(e) for some or all amounts that the CDCPG has incurred and may, in the future, incur as a result of the alleged release or threatened release of hazardous substances at the Cooper Drum Site.

## XI.    CLAIM FIVE FOR RELIEF: EQUITABLE INDEMNITY

*(As to all Defendants)*

62. The paragraphs above are re-alleged and incorporated here by reference.

63. The CDCPG has entered a Consent Decree under which it is obligated to cleanup the Cooper Drum Site and, the above allegations, set out the reasons why Defendants have liability at the Cooper Drum Site.

64. The CDCPG seeks recovery from Defendants on a comparative fault basis. To the extent the CDCPG's compliance with the Consent Decree requires the

---

118 F.3d 1298, 1303 (9th Cir. 1997) (overruled on other grounds).

CDCPG to pay more than its fair share, equitable indemnity allows the CDCPG to seek indemnity from Defendants who are not contributing their fair share for the remediation of hazardous substances at the Cooper Drum Site.

65. To date, Defendants have contributed no funds to address contamination at the Cooper Drum Site.

## XII. CLAIM SIX FOR RELIEF: PUBLIC NUISANCE

*(As to Neighboring Defendants)*

66. The paragraphs above are re-alleged and incorporated here by reference.

67. The Neighboring Defendants' release of hazardous substances and migration of those substances on and under the Cooper Drum Site constitutes a public nuisance under §§ 3479 and 3480 of the California Civil Code.

68. The Neighboring Defendants caused the nuisance by allowing persons or entities subject to their direction and control to release hazardous substances found on and under the Cooper Drum Site.

69. The nuisance created by the release and migration to the Cooper Drum Site of hazardous substances by the Neighboring Defendants affects neighboring communities and is a significant invasion of a public right. The Neighboring Defendants' conduct substantially affects the use and enjoyment of the Cooper Drum Site and adjacent areas.

70. The CDCPG has spent considerable sums to investigate and remediate the Cooper Drum Site as a direct and proximate result of the nuisance created and/or maintained by Neighboring Defendants.

## XIII. CLAIM SEVEN FOR RELIEF: PRIVATE NUISANCE

*(As to Neighboring Defendants)*

71. The paragraphs above are re-alleged and incorporated here by reference.

72. The Neighboring Defendants' release of hazardous substances, and the migration of those substances on and under the Cooper Drum Site, constitutes a continuing private nuisance under §§ 3479 and 3481 of the California Civil Code.

73. The Neighboring Defendants caused the nuisance by allowing persons or entities subject to their direction and control to release hazardous substances found on and under the Cooper Drum Site.

74. The CDCPG has a protected interest given its commitment to the cleanup of the Cooper Drum Site and the continuing nuisance created by the hazardous substances contamination from the Neighboring Defendants is substantially interfering with the CDCPG's investigation and cleanup of the Cooper Drum Site.

75. The CDCPG has spent considerable sums to investigate and remediate the Cooper Drum Site as a direct and proximate result of the nuisance created and/or maintained by the Neighboring Defendants.

### XIV. CLAIM EIGHT FOR RELIEF: CONTINUING TRESPASS

*(As to Neighboring Defendants)*

76. The paragraphs above are re-alleged and incorporated here by reference.

77. The CDCPG has a protected interest given its commitment to the cleanup of the Cooper Drum Site. The Cooper Drum Site continues to sustain actual harm because of the migration of contaminants which originate from the Neighboring Defendants.

78. The Neighboring Defendants' release of hazardous substances and the migration of those substances to the Cooper Drum Site constitutes a trespass. Further, the Neighboring Defendants have failed to mitigate the migration of hazardous substances from their respective properties or Sites to, on, and under the Cooper Drum Site.

79. The trespass is continuing, and the CDCPG has spent and continues to spend considerable sums to investigate and remediate the Cooper Drum Site.

80. As a direct and proximate result of the Neighboring Defendants' continuing trespass, the CDCPG has been harmed and is entitled damages.

## XV. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the CDCPG respectfully requests that the Court enter judgment in favor of the CDCPG:

i) For cost recovery from Defendants;

ii) For contribution from Defendants;

iii) For declaratory judgment against Defendants;

iv) For contribution and/or indemnity under the California Health and Safety Code;

v) For damages pursuant to California state law claims against the Neighboring Defendants;

vi) For equitable indemnity to the CDCPG and for payment of the CDCPG's attorneys' fees;

vii) For pre-judgment and post-judgment interest; and

viii) For such other and further relief as it deems just and proper.

Dated: October 6, 2021.

Respectfully submitted,

**JACKSON WALKER LLP**

By: *D.E. Vineyard*

|   |   |
|---|---|
| 1 | Daniel E. Vineyard (SBN 121132) |
| 2 | Chevazz G. Brown (*pro hac vice*) |
|   | Carolyn L. Campion (*pro hac vice*) |
| 3 | 1401 McKinney, Suite 1900 |
| 4 | Houston, Texas 77010 |
|   | (713) 752-4200 – Telephone |
| 5 | (713) 752-4221 – Fax |
| 6 | dvineyard@jw.com |
|   | cgbrown@jw.com |
| 7 | ccampion@jw.com |

**ATTORNEYS FOR PLAINTIFF COOPER DRUM COOPERATING PARTIES GROUP**

## CERTIFICATE OF SERVICE

I certify that on October 6, 2021, a true and correct copy of the foregoing pleading has been filed with the Court's ECF filing system, which will provide electronic notification of this filing to all registered counsel of record.

*/s/ D.E. Vineyard*

**Daniel E. Vineyard**

---

17
THIRD AMENDED COMPLAINT

30178016v.2